WILLIAM H. EDDY

*v.*

HENRY H. GAGE *et al.*

*Filed at Ottawa January 19, 1893.*

1. EJECTMENT—*burden of proof as to title.* In the action of ejectment the burden rests upon the plaintiff to prove the title he asserts. If the evidence fails to show title in him he can not recover.

2. PRACTICE—*directing what the verdict shall be.* If, on the trial of an action of ejectment, there is no evidence before the jury tending to prove title in the plaintiff, or from which the jury can, in the eye of the law, reasonably find in the plaintiff's favor, an instruction to find for the defendant may be properly given.

3. But where there is such evidence before the jury, it must be left to them for their consideration. It is not within the province of the court, on a motion to instruct to find for the defendant, to weigh the evidence and ascertain where the preponderance is. The function of the court is limited to determine whether there is or is not evidence tending legally to prove the fact affirmed, leaving out of view the effect of all modifying or countervailing evidence.

4. LIMITATIONS—*twenty years' possession gives title.* If a party enters into the possession of land under a deed therefor, and continues in possession under a claim of ownership for over twenty years, such entry and possession will constitute a bar to the right of entry by any one, not within the saving clause of the statute, claiming a paramount title. Such possession constitutes title, available not only for defense, but under which the holder can maintain ejectment against any one wrongfully intruding upon his possession.

5. SAME—*what constitutes adverse possession of prairie land.* In order to constitute an adverse possession of land under the Limitation law, it is not necessary that the party should live on the land, or have the same inclosed by a fence, or have plowed and cultivated it. Possession may be otherwise shown of wild and uncultivated land.

6. Actual possession of land may be held in different modes—by inclosure, by cultivation, by the erection of buildings or other improvements, or, in fact, by any use clearly indicating an appropriation to the use of the person claiming to hold the property. Any class of improvements or acts of dominion that indicate to persons residing in the neighborhood who has the exclusive control of the land, will constitute possession to the extent of the paper title under which the party entered, so as to enable him to maintain trespass for any injury to the estate.

7. SAME—*possession a question of fact.* Whether certain acts of dominion over prairie land, such as frequently visiting the same and looking after it, surveying it, and taking grass therefrom or selling the grass to others, and constant claim of ownership, are proper evidence to show actual possession, is a question of fact for the jury, and as they tend to prove possession, it is error for the court to withdraw such evidence from the jury by an instruction.

8. SAME—*seven years and payment of taxes.* In order to acquire title under section 7 of the Limitation law, the party asserting the same must not only show color of title and payment of all taxes for seven successive years, but must also show that the land was vacant and unoccupied during the time the taxes were paid. If the land, during the time of such payment, was in possession of another, the bar of the statute will not attach.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. FRANCIS ADAMS, Judge, presiding.

Mr. C. S. DARROW, Mr. MORRIS ST. P. THOMAS, and Mr. H. S. MECARTNEY, for the plaintiff in error:

As to what acts are evidence of actual possession, see *Davis* v. *Easley,* 13 Ill. 199; *Russell* v. *Mandell,* 73 id. 139; *Austin* v. *Rust,* 73 id. 493; *Morrison* v. *Kelly,* 22 id. 624; *Scott* v. *Delaney,* 87 id. 148; *Brooks* v. *Bruyn,* 24 id. 380; *Hubbard* v. *Kiddo,* 87 id. 578; *Fisher* v. *Bennehoff,* 121 id. 426.

The action of the court below was, in effect, sustaining a demurrer to the evidence. In such a case the doctrine of intendments, as applicable to the construction of a pleading when demurred to, is reversed, every intendment being in favor of, instead of against, plaintiff. Inferences antagonistic to plaintiff are not to be drawn from evidence which will admit of a construction in his favor. *Frazer* v. *Howe,* 106 Ill. 573;

*Pennsylvania Co.* v. *Conlan,* 101 id. 106; *Bartelott* v. *International Bank,* 119 id. 271; *Doane* v. *Lockwood,* 115 id. 490.

Mr. EDWARD ROBY, for the defendants in error:

Such casual use as cutting or having hay on the ground for a time, does not constitute occupancy such as to change the prairie from vacant and unoccupied land, within the meaning and intent of the statute. *Steinback* v. *Fitzpatrick,* 12 Cal. 295; *Drake* v. *Ogden,* 128 Ill. 608; *Ewing* v. *Alcorn,* 40 Pa. 493; *Doolittle* v. *Tice,* 41 Barb. 184; *Truesdale* v. *Ford,* 37 Ill. 210; *Austin* v. *Rust,* 73 id. 492; *Morrison* v. *Kelly,* 22 id. 623; *Brooks* v. *Bruyn,* 81 id. 543; 25 id. 380; Sedgwick & Waite on Trial of Title to Land, sec. 722.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of ejectment, brought by William H. Eddy, against Henry H. Gage and Andrew Sullivan, to recover the south twenty acres of the south-east quarter of the northwest quarter of section 28, township 38 north, range 14, east of the third principal meridian, in Cook county, Illinois, except a strip or right of way one hundred feet wide, occupied by the Chicago and Rock Island Railway Company. After the evidence was closed by the respective parties, the court instructed the jury to find for the defendants, and a verdict having been returned in accordance with the instruction, the court entered judgment on the verdict.

The plaintiff claimed title to the land involved, and, being plaintiff in the action, the burden to prove title rested upon him. If, therefore, there was no evidence before the jury tending to prove title in the plaintiff, on which the jury could, in the eye of the law, reasonably find in plaintiff's favor, the instruction to find for the defendant was correct. But where there is such evidence before the jury it must be left to them to determine its weight and effect. It is not within the province of the court, on a motion to instruct to find for defend-

ant, to weigh the evidence and find where the preponderance
is. The function of the court is limited strictly to determine
whether there is or is not evidence legally tending to prove the
fact affirmed, leaving out of view the effect of all modifying
or countervailing evidence. (*Frazer* v. *Howe*, 106 Ill. 564.)
Testing this case by the rule indicated, the question presented
is, whether the instruction was justified by the facts before the
jury.

The records of Cook county having been destroyed by the
fire of 1871, ante-fire abstracts of title were read in evidence,
as shown by the record. These abstracts showed the follow-
ing chain of title: First, a patent to Grant Goodrich, he
having entered the land in 1835; and second, a regular chain
of conveyances from Goodrich down to Isaac N. Arnold. After
Arnold acquired the title, on or about May 15, 1841, a judg-
ment was rendered against him in the circuit court of Cook
county, in favor of Erastus Bowen, for $961.26. On the sec-
ond day of March, 1842, execution was issued on the judgment
and levied on one hundred and sixty acres of land, of which
the twenty acre tract in controversy was a part. The prop-
erty was appraised, and on the 11th day of April, 1842, sold
to Erastus Bowen for $133.33, and execution returned satis-
fied in part. The abstract of title shows no sheriff's deed on
this sale, and no sheriff's deed was read in evidence; but as
to the twenty acre tract in controversy the abstracts showed
a chain of title from Erastus Bowen down to the plaintiff, as
follows: Bowen to Cole, warranty deed, March 3, 1843; Cole
to Bowen, quitclaim deed, May 26, 1844; Bowen to Dyer,
warranty deed, February 26, 1850; Dyer to Clement H. De-
Wolf, warranty deed, January 5, 1851; DeWolf to Gallup,
trust deed, December 3, 1857, (to secure notes to order of
Merrihew;) Gallup, trustee, to Higgins, trustee's deed, Au-
gust 3, 1860; Higgins to Merrihew, special warranty deed,
September 19, 1860; Merrihew to Eddy, plaintiff in error,
warranty deed, February 27, 1865.

From the above statement of plaintiff's title it will be seen that but one link was wanting to establish a chain of title from the United States to himself, and that was a deed on the sheriff's sale from the sheriff to Bowen. In order to supply the missing link, evidence was introduced tending to show a long continued claim of ownership, accompanied by various acts of ownership, by the plaintiff and his grantors, and also certain facts tending to prove the fact that a sheriff's deed had existed, and it was insisted that this evidence was competent for the consideration of the jury, from which they might presume the existence of a deed from the sheriff to Bowen. Much of the argument has been devoted to a discussion of this question, but in the view we take of the case we do not find it necessary to pass upon this point.

It will be observed that Eddy, the plaintiff, purchased the land, and obtained a warranty deed of Merrihew, on the 27th day of February, 1865. Up to this time those holding the title which the plaintiff acquired had not, so far as the evidence shows, been in the possession of the land. DeWolf, who obtained a deed in 1851 and held title some ten years, testified that during this time he never heard of any person claiming title to the land but himself. He visited the land two or three times a year. It was then open prairie, and, as he remembers, he paid all the taxes on the property. When Eddy purchased, the land was enclosed by a fence in the following manner: Calvin DeWolf owned the twenty acres adjoining on the north, and had it enclosed with a fence, and was using it as a vegetable garden. The Rock Island Railroad Company, which bounded the land on the east, had its track fenced. The tract on the west consisted of a farm owned by Bowen, which was enclosed by a fence. Thus the north, east and west lines of the land were fenced, and the Rock Island railroad, after passing over the south-east corner of the land in question, run in a south-west direction, intersecting the east line of the Bowen farm, thus completely enclosing the land

in question with a three-cornered tract on the south, known as the "Darton tract." Immediately after the purchase of the land by Eddy. he had it surveyed and the lines and corners established. He cut the grass and made hay from year to year, a part of the time himself and the balance of the time by others, to whom he leased the land for that purpose. This, as he testified, was continued from the time of his purchase down to March, 1886, when Gage entered upon the land and fenced it. One season the plaintiff cultivated four acres of land in potatoes. He drove out from Chicago to the land constantly, taking other parties with him. His visits to the land, acts of ownership over it, and claim of title, were notorious in the neighborhood.

A brief reference to some of the evidence on the question of possession may assist in arriving at a proper understanding of the rights of the parties:

George P. Sherwood testified: "First saw Eddy in connection with this property in 1879 or 1880. My father rented the land of him and I cut the hay for two years—1879 and 1880, I think. I cut hay off of about twenty or twenty-five acres,—was present and helped cut the hay and took it away."

Jacobs testified: "Am a butcher, and live at Englewood. I know the twenty acres between Seventy-second and Seventy-third streets, or the thirty acres between Seventy-second and Seventy-fourth streets, near the Rock Island track, claimed by William H. Eddy. I cut hay on it two years,—between 1880 and 1883, I think,—for myself and Mr. Sherwood. I used a portion of the hay and gave a portion to Mr. Eddy. I had no arrangement personally with Eddy,—that matter was left with Mr. Sherwood."

Stephen D. Underwood testified: "I know the tract of land lying between the Rock Island and Western Indiana tracks, south of Seventy-first or Seventy-second street. To my best recollection I cut the grass off of it in 1881 and 1882. I employed William McKirchie to help mow it one year, and a

little Swede they called 'Pete.' I brought the hay to my barn. I was keeping a livery at the time. I purchased the grass from Mr. Eddy both years. * * * To my best recollection I rented the ground or grass from Eddy. It was the year after Sherwood cut it. He was a neighbor of mine. I have ridden there several times with Eddy and been over the land with him. He used to come down there, along in 1875 or 1876, almost every Sunday, and I have ridden down there occasionally with him. Have been over the ground. Think I gave him $20 a year for the grass."

Lundgren testified: "I cut the grass on the Eddy land for Underwood for two years—1882 and 1883. Underwood hauled the hay home, and some of it went down town."

Combs testified: "I visited the land with Eddy in the summer of 1868 or 1869, and used to visit it with him up to within four or five years ago. From 1868 to 1885 or 1886 should say I was there with him several times every summer. When I first went with him I think there was a fence on the railroad side—Rock Island. There was a fence on the north side. I recollect there were some fences on the other side of it. Can't be positive about that. Have a remembrance of its being broken down. I know of hay being cut there. I think along the time I first knew of it he cut the grass a good many years himself. I saw him there with a wagon. In late years it was cut by Sherwood, Underwood, a Mr. Hicks, who lived immediately north of the property in question, and a man who went by the name of Chicken Hall. Eddy used to go on the land. He generally had a large pruning knife, and hardly ever went out there without pruning up some bushes,—not very large,—but he took good care of them."

Sullivan, on his cross-examination, after giving the names of several parties who mowed the grass, says he believed that one season the grass was not mowed.

Here was a period of over twenty-one years, from February, 1865, to March, 1886, that plaintiff was controlling and using

the land, claiming to be the absolute owner under his deed, and from his acts and conduct in relation to the land he was the recognized owner by all in the neighborhood where the land was located. If the plaintiff entered into the possession of the land, under his deed, in February, 1865, and continued in possession under a claim of ownership for a period of twenty years, such entry and possession would constitute a bar to the right of entry by any person, not within any saving clause of the statute, claiming a paramount title. The law on this subject is well settled. (*Turney* v. *Chamberlain*, 15 Ill. 271; *Kerr* v. *Hitt*, 75 id. 59.) Whether, however, the plaintiff established possession of the land for a period of twenty years, was a question of fact for the jury. If he did, then he was entitled to recover, whether he showed a regular chain of title from the government or not. The deed executed by Merrihew to him, in 1865, purporting to convey the land, with twenty years adverse possession, constituted title, available not only for defense, but under which he could maintain ejectment against any one who might intrude upon his possession.

It is said, however, that the evidence does not tend to prove that Eddy was in the possession of the land. He did not live on the land; but that was not required. He did not fence the land; that, however, was not necessary. Nor did he plow the land and raise crops upon it, except that a part of the tract was cultivated in potatoes one season; but that was not required. What improvements upon wild land may be regarded as sufficient to establish possession has been discussed by this court in a number of cases, and the rules that should control are well established. In *Truesdale* v. *Ford*, 37 Ill. 210, it was held that possession of land may be had in different modes,—by enclosure, by cultivation, by the erection of buildings or other improvements, or, in fact, any use that clearly indicates an appropriation to the use of the person claiming to hold the property. This rule has been approved in subsequent cases. (*Russell* v. *Mandell*, 73 Ill. 136;

*Hubbard* v. *Kiddo,* 87 id. 578 ; *McLean* v. *Farden,* 61 id. 106.) In the last case cited, in discussing the question, it is said : "It is not necessary that a party should have his land all enclosed with a fence before he can be said to be in actual possession. Any class of improvements or acts of dominion that indicate to persons residing in the immediate neighborhood who has the exclusive control of the land, will be deemed to constitute possession to the extent of the paper title under which such party entered, so as to enable him to maintain trespass for any injury to the estate." Under the rule laid down in the cases cited, we think that there was evidence from which the jury might find that Eddy was in the possession of the land for a period of twenty years.

But little need be said in regard to the title relied upon by the defendant Gage. He relies, first, on color of title acquired March 28, 1877, payment of taxes for seven successive years after that date while the land was vacant and unoccupied, and possession taken by him in the latter part of March, 1886. The color of title and payment of taxes for seven successive years was clearly established, but in addition it devolved upon defendant to establish that the land was vacant and unoccupied during the time the taxes were paid, and, as has been seen, upon this question there was a controversy, the plaintiff claiming possession during the time the taxes were paid. If the plaintiff was in possession during that time the defendant failed to make out a case under the Statute of Limitations. Whether the land was vacant and unoccupied during the time the taxes were paid, or whether it was in the possession of the plaintiff, were questions for the jury, and in our judgment the court erred in taking the case from the jury by the instruction.

The defendant also claimed title under Isaac N. Arnold, and, for the purpose of establishing such title, read in evidence a deed dated May 5, 1885, from Katherine D. Arnold, sole trustee, with power of sale, under the will of Isaac N. Arnold, to himself, purporting to convey the land in contro-

versy. If the plaintiff was in possession of the land from February, 1865, for a period of twenty years, as owner, as claimed by him, then it is plain the title held by Arnold, whatever it was, was barred. Whether plaintiff was in possession of the land, under claim of title, for a period of twenty years, as we understand the record, is the turning point in the case.

We think the court erred in the instruction to find for the defendant, and for that error the judgment will be reversed and the cause remanded.        *Judgment reversed.*

Subsequently, on October 26, 1893, upon an application for a rehearing, the following additional opinion was filed:

Per Curiam: A rehearing having been granted in this case, we have again fully considered the case as first before this court, and fully examined the questions presented by the petition for rehearing, and are unable to reach a different conclusion from that announced in the opinion filed January 19, 1893. The opinion then filed is declared the opinion of this court, and ordered re-filed. The judgment reversing and remanding the cause to the circuit court of Cook county will be ordered.

*Judgment reversed.*