MARY SULLIVAN *et al.*

*v.*

WILLIAM H. EDDY.

*Filed at Ottawa October 29, 1894.*

1. STENOGRAPHER—*court may amend record by the stenographer's minutes.* The notes of a shorthand reporter appearing in a case by express appointment or employment of parties, and recognized by the court as the reporter for that case, may be treated as a proper minute of the court upon which to base an amendment of the record, and bench notes made by the judge himself are not necessary.

2. RECORD—*judge may amend by the bill of exceptions.* The court, when called upon to correct a mistake of the clerk in entering up its orders, may look to a bill of exceptions which has been signed and filed and has become a part of the record, for the purpose of amending such entry.

3. SAME—*may be corrected by description in judgment.* The court, for the purpose of correcting the record as to which count of a declaration in ejectment was stricken out, may look to the judgment describing the lands in the language of the count claimed to have been retained, but shown by the record to have been stricken out.

4. APPEAL—*judgment in ejectment for less than verdict.* Defendant in ejectment cannot complain, on appeal, that judgment was entered for a less number of acres than was included in the verdict for the plaintiff.

5. DEEDS—*conveyance of fee subject to easement.* A deed of premises described by metes and bounds, "reserving a strip two rods wide off from the north and west side of said premises for a street," conveys the fee to the whole premises described, subject only to an easement in the public over such strip.

6. SAME—*recording not conclusive of delivery.* The recording of a deed is not conclusive of its delivery, where it was not for the benefit of the grantee, the latter was ignorant of it, and it was retained by the grantor, who continued to control the property and maintain his former relations toward it as owner.

7. ADVERSE POSSESSION—*continuity of, not interrupted by undelivered deed.* The continuity of adverse possession is not interrupted by an undelivered deed from the possessor to a third person, although the latter subsequently reconveys for the purpose of removing the apparent cloud on the title.

8. TRIAL—*when admission of counsel may be withdrawn.* An admission by counsel may be withdrawn by permission of the court, where the adverse party is deprived of no right, and the party making it is given no undue advantage thereby.

APPEAL from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

EDWARD ROBY, for appellants.

C. S. DARROW, MORRIS ST. P. THOMAS, and H. S. MECARTNEY, for appellee.

WILKIN, C. J.: This is an action of ejectment, by appellee, against appellants. The land in controversy is 9 and 9-100 acres, being 38 and 26-100 rods square, in the northwest corner of the south-east quarter of the north-west quarter of section 28, township 38, north, range 14, east, in Cook county, Illinois. The litigation is between appellee and Henry H. Gage, they each claiming title to the premises. The issues on the merits of the controversy are simple, but it cannot be truthfully said they are so presented by this record. We shall dispose of the points made in argument only so far as we regard them material

to the substantial rights of the parties, viz., as affecting the question of title to the premises, and right of possession.

The declaration, as filed, was of two counts. The first, as afterwards amended, described the premises sued for as "commencing at the north-west corner of the southeast quarter of the north-west quarter of section 28, in township 38, north, range 14, east of the third principal meridian, running thence south 38 rods and 26-100 of a rod, thence east 38 rods and 26-100 of a rod, thence north 38 rods and 26-100 of a rod, thence west to the place of beginning," in Cook county, Illinois. The second described the same as "the north-west quarter of the southeast quarter of the north-west quarter of section 28," etc., giving the same town and range as in the first count.

The record filed in this court shows that on June 1, 1893, the first count was stricken out, on motion of plaintiff's attorneys. The plea was not guilty, and on the trial a verdict was returned finding the defendants "guilty of unlawfully withholding the premises described in the declaration," etc. Judgment was entered on the verdict, in which the premises were described by metes and bounds, as in the first count, except that the range was given as 13 instead of 14. Defendants prayed an appeal, and filed the record in this court October 18, 1893. On the 21st of that month plaintiff's counsel applied to and obtained from the circuit court an order amending the record, so as to make it show that the second count of the declaration was stricken out before the trial, instead of the first, and that the judgment was for premises in range 14, instead of 13. To the entry of this order counsel for defendants objected, and the objection being overruled, an exception was taken and the evidence preserved by proper bill of exceptions.

The amendment showing the second count, and not the first, dismissed, as recited in the bill of exceptions, was made upon "no minute of the clerk or of the court,

unless the bill of exceptions be a minute of the court."
Affidavits of several parties were filed in support of the
motion to amend, stating their knowledge and recollec-
tion of what was said by plaintiff's counsel and the court
at the time one of the counts was dismissed. One of
these affidavits was by a stenographer, John Gray, who
made oath that he was present in court on June 1, when
said cause was called for trial, and had been employed
to report the case in shorthand; that he did on that day
so report a portion of the proceedings and testimony,
and that in his shorthand notes thereof appears the fol-
lowing: "Plaintiffs elect to rely on the first count as
amended, and dismiss as to the second," and it is stated
in the bill of exceptions, "that the memory of the court
conforms to the affidavit of John Gray." If the judge
himself had made the minute shown by the stenographer's
notes there could have been no question, under our de-
cisions, of its sufficiency to authorize the making of the
amendment. Under the present practice, when a stenog-
rapher has been employed to report a case on trial and
enters upon that duty, we think the judge may rely upon
his minutes instead of keeping docket entries or bench
notes himself. When a shorthand reporter appears in a
case, either by express appointment or being employed
by parties, and is recognized by the court as the reporter
for that case, we see no reason why his notes may not
be treated as a proper minute of the court upon which to
base an amendment. These views are in harmony with
what we said in the recent case of *Chicago, Milwaukee and
St. Paul Railway Co.* v. *Walsh*, 150 Ill. 607. But if it be
conceded that it does not appear, from this bill of excep-
tions, that John Gray was recognized by the court as the
reporter of the case, so as to make his stenographic notes
a sufficient minute upon which to base the amendment,
still we think enough was shown by the record before the
court when the amendment was allowed to authorize it.

By the first instruction given to the jury upon the trial, at the instance of the defendants, they were told : "The defendant is in possession of the land claimed, which is 38 and 26-100 rods square, in the north-west corner of the south-east quarter of the north-west quarter of section 28, township 38, range 14," etc. The description of the land here given is in substance the same as in the first count, and does not correspond with that given in the second,—that is to say, the first count of the declaration was the only one which claimed the land as being 38 and 26-100 rods square, etc. The jury were therefore, in effect, told by the instruction that the trial was upon that count. When the amendment in question was made the bill of exceptions had been signed and filed, and thereby became a part of the record, and we see no reason why the court, when called upon to correct a mistake of the clerk in entering up its orders, might not look to it as well as any other part of the record. The real question before the court, when it was asked to make the order of amendment, was, upon which count of the declaration was the trial had. The first instruction given on behalf of defendants settled that question. And again, the judgment entered upon the verdict described the land by metes and bounds, in the precise language of the first count, (except as to the range,) and we think the court could also have properly looked to it as a basis for the correction of the record. (*Stuart* v. *City of Logansport*, 87 Ind. 584.) The north-west quarter of the south-east quarter of the north-west quarter, described in the second count, contained a fraction over ten acres, and necessarily covered the 9 and 9-100 acres described by metes and bounds in the first. Therefore, if the trial was in fact upon the second count, and the verdict of the jury is treated as a finding that the defendants unlawfully withheld the ten and a fraction acres described in that count, it is none the less a finding of guilty as to the 9 and 9-100 acres, which was a part of the ten and a fraction, and

although, by the terms of the statute, the judgment should, in that case, have been that "the plaintiff recover the possession of the premises according to the verdict of the jury," we are not prepared to hold that it was reversible error to enter a judgment for less than the whole number of acres included in the verdict. At most, there was but a variance between the verdict and the judgment, and that in the defendants' favor, complaint of which could not be made on appeal or writ of error. (*Camden* v. *Haskell*, 3 Rand. 462 ; Tyler on Ejectment, 582.) We are of opinion, however, that the amendment was properly allowed, and the case should be treated as having been tried on the first count.

The judgment was clearly amendable as to the range by the declaration. The first count as amended, as well as the second, gave the range as 14.

On the trial, plaintiff claimed title under a warranty deed from Peleg Barker to himself, dated January 11, 1856, and recorded July 23, 1856, conveying the premises described in the first count of the declaration as amended, the description, however, being followed by the language, "reserving a strip two rods wide off from the north and west side of said premises for a street." It will be seen that the first count, as well as the judgment below, ignores this language, and it is insisted that in this there is manifest error. The position is, that the deed on which the plaintiff relied did not convey to him two rods on the north and west of the land claimed, and which he recovered, and therefore, to that extent, at least, the judgment of the circuit court is wholly unsupported by proof. Construing the language of the deed above quoted as a mere reservation, as we think must be done, the fee to the whole 9 and 9-100 acres passed to the grantee, subject only to an easement in the public over the two-rod strips for streets. We so construed similar language of a deed in *Gould* v. *Howe*, 131 Ill. 490. In *Elliott* v. *Small*, 35 Minn. 396, the description in a deed was of five acres by metes

and bounds, followed by the language, "reserving from said grant a strip thirty-three feet in width on the south side of said tract for a public street." In an action of ejectment the question arose whether the fee to the strip passed by the deed, and it was held that it did, the court saying : "It is difficult to see why, when he had adopted the plan of describing the property by its width, in chains and links, the grantor should have specified a width greater than the actual width of the premises which he intended to convey, or why he should have embraced in the specified width thirty-three feet more than he intended to convey, simply for the purpose of taking it out again. The obvious and natural construction is, that he meant to convey all that he described as a five-acre tract, nine chains and ninety-six links long by five chains two links wide. * * * The strip is 'reserved' for a public street, and for nothing else. This does not require the exclusion of the fee of the strip from the grant, but only an easement ; and upon the principle that the grantor's deed is to be taken most strongly against himself, no such exclusion of the fee is to be implied." This language is peculiarly applicable to this case. The distinction between an exception in a deed of conveyance and a reservation is clearly pointed out in Washburn on Real Property, (vol. 3, 640,) sustaining the view here expressed.

If, then, plaintiff proved title under the deed in question, we have no doubt of the correctness of the judgment giving him the fee to the strips reserved for streets. To establish such title he relied upon two sources : First, twenty years' actual adverse possession under his deed from Barker; and second, a connected chain of title from the government. He offered in evidence deeds purporting to convey lands of which the tract in controversy is a part, showing a connected title from the United States to himself. It is insisted, however, that because of defects appearing upon the face of one or more of those deeds they were ineffectual to convey the legal title, and

in view of the other claim, and the defense set up, we do not feel called upon to decide the questions raised on this branch of the case.

The defendant Henry H. Gage entered upon the land the latter part of March, 1886, and enclosed it with the adjoining twenty-acre tract, involved in the case of *Eddy* v. *Gage et al.* 147 Ill. 162. He claims title under a tax deed dated March 20, 1877. This deed was offered in evidence on the trial only as color of title made in good faith, which, it was claimed, with payment of taxes upon the land, *as vacant and unoccupied,* for seven successive years, vested the legal ownership in Gage under section 7 of the Statute of Limitations. (2 Starr & Cur. chap. 83, p. 1547.) The real question as to the validity of this claim depends upon whether the premises were vacant and unoccupied during the seven years succeeding the date of the tax deed under which payments of taxes were made. Therefore, plaintiff's claim of title by twenty years' possession, if made out, not only establishes his right, but disproves that of the defendant Gage. This defendant also offered in evidence, from several different parties, quit-claim deeds, but we do not understand it to be contended that any of these was sufficient to vest the legal title in the defendant, as against the plaintiff, if he was in the actual adverse possession under his deed from Peleg A. Barker, of January 11, 1856, to the time defendant entered.

This case, then, like that of *Eddy* v. *Gage et al. supra,* may be made to turn upon the question of fact whether the plaintiff was in the actual, adverse possession of the premises for a period of twenty years, extending up to the time the defendant Gage entered. By its special findings in answer to questions propounded by the court, at the instance of counsel for the defendants, the jury found this fact against them, and we think the evidence justified the finding. On this question the case is not distinguishable from the one between the same parties above referred to. The evidence clearly shows that the two

tracts, after the purchase of the twenty acres in February, 1865, were treated by the plaintiff as one, and the defendant, after taking possession, has done the same. That the plaintiff took possession of the land now in question upon obtaining his deed from Barker, caused the same to be surveyed then and twice afterwards, and exercised acts of ownership over it up to the time he purchased the twenty acres, is not denied. That he claimed ownership of both tracts thereafter, exercising control over the same, is not questioned. That any one else claimed to own either tract, or interfered in any way with his control over it during the twenty years prior to the defendants' entry, is not pretended. The only contention is, that plaintiff's control and acts of ownership over it did not, in a legal sense, amount to possession. *Eddy* v. *Gage et al. supra*, and the previous decisions of this court there cited, are conclusive against this contention.

An attempt is made in the argument to construe the evidence as showing that the cutting of hay, and other acts of ownership by plaintiff, shown by the evidence, were upon the twenty acres, and that there is no proof of such acts on this land. We do not so read the testimony.

It is said, however, that plaintiff parted with his title to the 9 and 9-100 acres by warranty deed to his brother, Lorenzo S. Eddy, May 14, 1858. That such a deed was executed by plaintiff and his wife at the date named, and placed on record in Cook county the following day, is not denied. Counsel for appellants insist that after the date of this deed any acts done by plaintiff tending to show his possession and occupancy of the land were done without claim of title, and therefore can not aid him. It is contended on behalf of plaintiff that the deed to Lorenzo was not delivered, and hence never took effect.

There is no conflict in the evidence as to what was done in the execution of that deed. It was signed and acknowledged by plaintiff and his wife on the day of its

date.   He filed it for record and again took possession of
it, which he ever afterwards retained.   The grantee, at
the time, lived in the State of Ohio, and had no knowl-
edge of its execution, recording, or even of its existence.
It was not made for his benefit, but with some vague pur-
pose on the part of plaintiff of having the land recon-
veyed, after his death, to his wife and children.   The
only evidence of delivery shown by the record is the fact
that the deed was executed, acknowledged and recorded.
While some of the cases hold that these facts will raise
a presumption of delivery, the presumption is never held
to be conclusive, and the later decisions of this court are
to the effect that in the case of an adult grantee they do
not, of themselves, prove delivery.   Thus, it was said in
*Weber et al.* v. *Christen*, 121 Ill. 91: "We think, in the case
of an adult grantee, the acknowledging and recording of
the deed without his knowledge or consent does not,
of itself, according to the weight of authority, amount
to a delivery."   This conclusion logically results from
the well understood rule that acceptance on the part of
the grantee is essential to the delivery of every deed of
conveyance, and when the grantee is *sui juris* there is
prima facie no presumption of acceptance from the unau-
thorized acts of the grantor.   When the deed is for his
benefit, under certain circumstances acceptance may be
presumed, but not necessarily.   Even in the cases which
treat the act of recording as *prima facie* evidence of a
delivery, it is held that such evidence is successfully re-
butted by showing that the conveyance was intended to
confer no benefit upon the grantee.   (*Union Mutual Life
Ins. Co. et al.* v. *Campbell*, 95 Ill. 267.)   The evidence in
this record on the question of delivery, under the rules
laid down in the *Campbell case*, clearly proves that the
conveyance from plaintiff to Lorenzo Eddy never took
effect for want of delivery.   It may be added that the
subsequent conduct of plaintiff clearly shows that he did
not, by that deed, intend to divest himself of ownership

in the premises. He retained the deed. He continued to control the property. He paid taxes, and in every respect maintained his former relations towards it as owner. The brother, in the meantime, was wholly ignorant of the deed, and claimed nothing under it. True, he reconveyed the land to plaintiff, at his request, shortly before the bringing of this suit. That conveyance, however, had no other effect than to remove the apparent cloud on plaintiff's title shown by the deed records of Cook county.

It appears that during the trial, speaking of the deed to Lorenzo Eddy, one of the plaintiff's attorneys said, "I am willing to admit the deed was delivered by recording." The court afterwards allowed that admission to be withdrawn, and counsel for appellants complains of this, and many other rulings of the court below, as an abuse of discretion. We are at a loss to perceive why the admission should have been made, but we do not regard it as a conclusive admission of the delivery of the deed. But if it could have been given that effect, there was no error in permitting it to be withdrawn. The defendants were deprived of no right and the plaintiff was given no undue advantage thereby. We find nothing in the record to justify us in holding that there was an abuse of judicial discretion in the ruling.

Error is assigned on the giving, refusing and modifying instructions. There was but one substantial, controverted question of fact tried by the jury, viz., was the plaintiff in adverse possession of the land in controversy, continuously, for twenty years preceding Gage's entry, claiming title hostile to others. We have examined the instructions upon which the correctness of the ruling of the court below is questioned, and are satisfied that, as against appellants, there was no prejudicial error in that regard. On the question of fact above stated, and upon which this decision is based, the jury were fully and fairly instructed. Under our decision in *Eddy* v. *Gage et al.* 147

Ill. 162, the jury were clearly warranted, under the evidence, in finding for the plaintiff on the question of twenty years' hostile possession.    In fact, without disregarding the evidence they could not have found otherwise.    Therefore, even if errors were committed upon the trial affecting other branches of the case, a reversal would not follow, such errors being immaterial.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*