HENRY H. GAGE et al.

v.

CLARA E. EDDY.

Opinion filed April 17, 1899—Rehearing denied June 8, 1899.

1. EVIDENCE—section 2 of Evidence act construed. A suit against grantees of a deceased person, which is not defended by the executor, heirs, legatees or devisees of the deceased, is not one in which the plaintiff is prohibited, by section 2 of the Evidence act, (Rev. Stat. 1874, p. 488,) from testifying in his own behalf as to personal transactions with such deceased person. (Goelz v. Goelz, 157 Ill. 33, followed.)

2. SAME—when declarations in disparagement of title are admissible. Declarations in disparagement of the title of the declarant, made during the continuance of the title in him or while the property was in his control, are admissible in evidence against his subsequent grantee or those claiming under him.

3. SAME—when deed is admissible in ejectment as showing character of possession. Where a small part of an entire tract in dispute in ejectment has been occupied by a third party by consent of the plaintiff, and such party has removed and the possession passed to other parties, a trust deed made by such third party is admissible for the purpose of showing that the other parties occupied the land in the manner it was occupied by the third party,—that is, by permission of the plaintiff.

4. INSTRUCTIONS—when instruction authorizing jury to presume execution of deed is not erroneous. An instruction in ejectment authorizing the jury to presume that a sheriff's deed conveying the land in controversy, which would supply the missing link in plaintiff's chain, was executed and delivered, is not erroneous, where they are required to find, from the evidence, facts which make it probable that such deed existed and had been lost, and where the plaintiff, the records having been destroyed by fire, has been obliged to rely upon an ante-fire abstract showing the judgment, levy, sale and return of the execution satisfied, but no sheriff's deed or redemption, and the evidence shows that the execution debtor never claimed the land after the sale, though residing near it many years, knowing it to be in possession of the purchaser and his grantees.

5. APPEALS AND ERRORS—when the filing of a certificate of sale will be presumed on appeal. It being a duty imposed by statute to file a certificate of sale on execution, it will be presumed, on appeal, in ejectment, that such certificate was filed, where there is no evidence to the contrary and the records of the county have been destroyed by fire.

APPEAL from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

EDWARD ROBY, for appellants.

CLARENCE S. DARROW, H. S. MECARTNEY, and MORRIS ST. P. THOMAS, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was an action of ejectment brought by William H. Eddy, against Henry H. Gage, to recover the south twenty acres of the north half of the east half of the northwest quarter of section 28, township 38, north, range 14, east, in Cook county. The action was brought in 1889, and the first trial was had in April, 1892, when the circuit court instructed the jury to find for the defendant. On appeal we held the instruction was erroneous and reversed the judgment. (*Eddy* v. *Gage*, 147 Ill. 162.) A second trial resulted in a verdict and judgment in favor of the plaintiff, but upon appeal the judgment was reversed on account of an error in the exclusion of certain evidence. (*Gage* v. *Eddy*, 167 Ill. 102.) A third trial resulted in a verdict and judgment in favor of the plaintiff, to reverse which the present appeal is prosecuted.

The plaintiff, Eddy, claimed to own a ten-acre tract adjoining the twenty acres on the south, to recover which he also brought an action of ejectment. Plaintiff purchased the ten-acre tract in 1856, and obtained a deed of conveyance from Peleg A. Barker. The twenty-acre tract he bought of Phineas E. Merrihew in 1865, receiving from him a warranty deed dated February 27, 1865, which was recorded March 30, 1865. As to both tracts of land the plaintiff claimed a regular chain of title from the government to himself. He also claimed title by limitation, based upon more than twenty years' adverse possession. The chain of record title as to the two tracts differed somewhat, but the limitation title was predicated upon the same acts of possession, so that the evidence of pos-

session as to one tract applied to the other, and the parties stipulated that any evidence introduced on the trial as to one tract, so far as competent, might be used on the trial involving the other tract.

There have been two trials as to the ten-acre tract, both resulting in a verdict and judgment in favor of the plaintiff. In *Sullivan* v. *Eddy,* 154 Ill. 199, on the first appeal, in speaking of the possession of Gage, we said (p. 206): "This case, then, like that of *Eddy* v. *Gage,* 147 Ill. 162, may be made to turn upon the question of fact whether the plaintiff was in the actual adverse possession of the premises for a period of twenty years, extending up to the time the defendant, Gage, entered. By its special findings in answer to questions propounded by the court at the instance of counsel for the defendants, the jury found this fact against them, and we think the evidence justified the finding. On this question the case is not distinguishable from the one between the same parties above referred to. The evidence clearly shows that the two tracts, after the purchase of the twenty acres in February, 1865, were treated by the plaintiff as one, and the defendant, after taking possession, has done the same." On a subsequent appeal (164 Ill. 391,) the finding of the jury in favor of Eddy was again sustained. The ruling in these cases will be referred to later in this opinion.

We have been favored with an able and elaborate argument by counsel for the appellant, in which various grounds for a reversal of the judgment are relied upon. The grounds for reversal will be considered in the order named in the argument.

The first point relied upon is, that William H. Eddy was incompetent to testify to any matter occurring, or alleged to occur, prior to the death of Isaac N. Arnold. It appears from the record that plaintiff proved on the trial a regular chain of conveyances from the United States to Isaac N. Arnold. The deed to Arnold bears date

March 8, 1842. Arnold died April 24, 1884, testate, and on the 15th of May, 1885, the defendant, Gage, obtained a quit-claim deed from Katherine Arnold, executrix and testamentary trustee of Isaac N. Arnold, and on the trial relied upon this deed for the purpose of proving title in himself. If the testimony objected to was incompetent it was rendered so by section 2 of chapter 51 of the Revised Statutes, entitled "Evidence and Depositions." Section 1 of that statute provides that no person shall be disqualified as a witness by reason of his interest in the event of the action, as a party or otherwise, except as otherwise in the act provided. Section 2 is as follows: "No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends as the trustee or conservator of any idiot, habitual drunkard, lunatic or distracted person, or as the executor, administrator, heir, legatee or devisee of any deceased person, or as guardian or trustee of any such heir, legatee or devisee, unless when called as a witness by such adverse party so suing or defending, and also except in the following cases,"—not necessary here to be stated. The defendant here was not defending as trustee, conservator, executor or administrator, nor as heir, devisee or legatee of any deceased person, nor as guardian or trustee of any such heir, legatee or devisee. Gage was defending in his own right, as grantee of the executor of the estate of Isaac N. Arnold. The statute cannot, by any fair or reasonable construction, be held to apply to the grantee of an executor, heir or devisee.

The appellant has cited a number of authorities to sustain his position, but a review of those cases is not necessary here. The question has been decided adversely to appellant's contention by this court in *Goelz* v. *Goelz*, 157 Ill. 33. That case, so far as the question here involved is concerned, is quite similar to the one under considera-

tion, and it was there held that a suit against grantees of a deceased person, which is not defended by the executor, heirs, legatees or devisees of the deceased, is not one in which the plaintiff is prohibited by the statute from testifying in his own behalf as to personal transactions with the deceased. The ruling of the court in the admission of the evidence was in conformity to the case cited, and no reason is perceived why that ruling should be disturbed.

Appellant's second ground of reversal is, that neither William H. Eddy nor Clement H. DeWolf was competent to testify against Henry H. Gage, or those in privity with him, as to any matter occurring or alleged to have occurred prior to the death of Isaac N. Arnold, which occurred April 24, 1884. The question in regard to the admission of this evidence is embraced in the first point considered, and needs no further discussion here.

As to the third point, that the testimony of Eddy and of DeWolf tending to show that Arnold admitted in his lifetime that his title had been conveyed by him or by the sheriff to Bowen or his assigns ought to have been rejected, it may be said that the admissions objected to were statements made by Isaac N. Arnold to the witnesses at a time when they claimed to own the land, that he had no title or interest in it. The admissions were made many years before Gage acquired any interest in the land, and at a time when the records of Cook county failed to disclose that Arnold had parted with his title. The testimony of Eddy and DeWolf was read from bills of exceptions on former trials, and upon an examination of the record it will be found that the objection of appellant to the reading of the evidence was, that the witnesses testifying to the conversations with Arnold were incompetent because Arnold was dead and Gage claimed title under him. We are inclined to the opinion that the objection made would only go to the competency of the witnesses to testify as claimed in appellee's argument, and not to the admissi-

bility of the evidence itself, and upon this ground the court properly overruled the objection to the admission of the evidence.

But conceding that the objection was broad enough to raise the question as to the admissibility of the declarations themselves, we think the court ruled correctly on the admission of the evidence. The testimony of Clement DeWolf was substantially as follows: That he knew Isaac N. Arnold; that he had a conversation with him in reference to this land; that he went to Arnold to try to procure a quit-claim deed from him; that the witness did not have the title examined at the time he bought, but that afterwards his brother, Calvin DeWolf, a lawyer, examined it, and at his suggestion the witness went to see Arnold. He was then asked, "What took place between you and Mr. Arnold?" The defendants renewed their objection that the witness was not competent, and especially objected to the reading of his testimony as to his conversation with Arnold. The court overruled the objection and permitted the testimony to be read in evidence, and the defendants then and there excepted. The witness then answered: "I asked him if I could get him to give me a quit-claim deed for that property. He said he would not quit-claim it, for he had not any title to it. I described the property to him."

William H. Eddy testified that he had known Isaac N. Arnold forty-five years. The record is as follows: "When plaintiff was reading this testimony April 8, 1897, the following testimony as to conversation with Arnold was objected to as incompetent, Arnold being dead; but the court overruled the objection, and defendants then and there excepted." The testimony proceeds as follows:

"I had a transaction with Isaac N. Arnold with reference to this property.

Q. "About how long before his death was that?

A. "It was shortly after I purchased the land—the twenty-acre tract. It must have been about 1866. * * *

We met. I said: 'Mr. Arnold, there is one little favor that I wish you would do for me. I bought a little patch out here. I have nine acres and I could not sell it, and I thought I would fix up something big enough for a garden, so I bought twenty acres from an old man named Merrihew. They told me, in looking over the abstract, that it was necessary that you should quit-claim.' He said, 'Where is it?' I said, 'In section 28, 38, 14.' He said: 'Why, I will give you a quit-claim; I will if you will come into my office; I have no claim to any land there.'"

We think it is well settled by the current of authority that the declarations of the owner of land in disparagement of his title, made after he has parted with the title, are not admissible against the grantee or person claiming under him, but declarations made by a person while he is the owner may be admitted against a subsequent grantee or those claiming under him. The rule is clearly stated in 5 Am. & Eng. Ency. of Law, (1st ed.) 367, as follows: "Declarations in disparagement of the title of the declarant are admissible as original evidence, but they must be made during the continuance of title in the declarant or while the property was in his control. They are not admissible if made before the title has been acquired or after it has been transferred, and when such declarations are offered, the time at which they were made must also be shown." (See, also, 1 Greenleaf on Evidence, sec. 189; *First Nat. Bank* v. *Strang*, 138 Ill. 347.) What weight should be given to the evidence was not involved in the question as to its admissibility. That question may be considered in connection with other evidence when we consider the instructions given by the court to the jury.

The fourth point relied upon to reverse the judgment, as stated in the argument of the attorney for the defendant, is as follows: "The jury returned a general verdict of guilty, and also returned a special finding upon the following question, which was submitted to them by the

court, at the request of the plaintiff: 'Was William H. Eddy in the actual, open, visible, notorious, exclusive, uninterrupted and adverse possession of the land described in the declaration, under claim of title thereto, continuously, for the full period of twenty years prior to the fencing of the land by defendant, Gage, in 1886?' Their answer was, 'Yes.' The point here presented is, that the verdict is contrary to the evidence on this point, and that the instructions misled the jury as to the evidence on this point; also, that the court erred in admitting evidence thereon for plaintiff and excluding evidence offered thereon by defendants."

As has been seen, the land in controversy was conveyed by Phineas E. Merrihew and wife to William H. Eddy, the plaintiff, on February 27, 1865, and the deed was recorded on March 30, 1865. The plaintiff claimed on the trial, and by evidence undertook to establish the fact, that upon making the purchase he went into the possession of the land under his deed from Merrihew, and that he continued in the possession, claiming to own the property, from the time of his purchase until March, 1886, when the defendant, Gage, without right took possession of the land, fenced it and erected a house thereon. In *Eddy* v. *Gage*, 147 Ill. 162, when this case was here for the first time, in speaking of the possession of Eddy, we said (p. 167): "Immediately after the purchase of the land by Eddy he had it surveyed and the lines and corners established. He cut the grass and made hay from year to year, a part of the time himself and the balance of the time by others to whom he leased the land for that purpose. This, as he testified, was continued from the time of his purchase down to March, 1886, when Gage entered upon the land and fenced it. One season the plaintiff cultivated four acres of land in potatoes. He drove out from Chicago to the land constantly, taking other parties with him. His visits to the land, acts of ownership over it and claim of title were notorious in the neighborhood."

The court then referred to the evidence of certain wit-
nesses showing or tending to prove various acts of pos-
session on the part of Eddy, and cited authorities to
establish the acts necessary to constitute possession of
lands situated like the lands in question, and said: "Un-
der the rule laid down in the cases cited we think that
there was evidence from which the jury might find that
Eddy was in the possession of the land for a period of
twenty years."

In *Sullivan* v. *Eddy*, 154 Ill. 199, where the ten-acre
tract was involved and where the facts in regard to the
possession of Eddy are the same as in this case, in dis-
posing of that case we said (p. 206): "This case, then,
like that of *Eddy* v. *Gage*, 147 Ill. 162, may be made to turn
upon the question of fact whether the plaintiff was in the
actual, adverse possession of the premises for a period
of twenty years, extending up to the time the defendant
Gage entered. By its special findings in answer to ques-
tions propounded by the court at the instance of counsel
for the defendants the jury found this fact against them,
and we think the evidence justified the finding. On this
question the case is not distinguishable from the one be-
tween the same parties above referred to. The evidence
clearly shows that the two tracts, after the purchase of
the twenty acres in February, 1865, were treated by the
plaintiff as one, and the defendant, after taking posses-
sion, has done the same. * * * That any one else
claimed to own either tract or interfered in any way with
his control over it during the twenty years prior to the
defendant's entry is not pretended. The only contention
is that plaintiff's control and acts of ownership over it
did not, in a legal sense, amount to possession. *Eddy* v.
*Gage, supra*, and the previous decisions of this court there
cited, are conclusive against this contention." The court
further said: "Under our decision in *Eddy* v. *Gage*, 147 Ill.
162, the jury were clearly warranted, under the evidence,
in finding for the plaintiff on the question of twenty years'

hostile possession. In fact, without disregarding the evidence they could not have done otherwise." In the same case on a subsequent trial the jury had found, by special verdict, that Eddy was in the actual, open, visible, notorious, exclusive, uninterrupted and adverse possession of the land, under claim of title, continuously, for the full period of twenty years prior to the time Gage took possession, in 1886, and as will appear upon examination of the decision in 164 Ill. 391, we held that the finding was sustained by the evidence.

It thus appears that in both trials as to the ten-acre tract, and also in the last two trials of this case, the jury have found, by special verdict, that Eddy was in the possession of the land for twenty years prior to the entry made therein by Gage, and in two of the cases the verdict of the jury has been sustained and approved by this court. We are now asked to disregard the finding of fact by four juries and reverse the judgment upon the alleged ground that the verdict is contrary to the evidence. To do this we must disregard the findings of four juries on the identical question of fact, and we must also overrule what was said by this court in two cases where the finding of the jury on the question here involved was approved. This we are not prepared to do.

On the last trial of this case plaintiff introduced the evidence of all the witnesses who had testified in former trials except one, and in addition he introduced eight new witnesses. The defendant also called a large number of witnesses who testified in his behalf. We have carefully examined all the evidence introduced by the respective parties, and after giving the evidence due consideration we are satisfied that the verdict of the jury finding that William H. Eddy was in the adverse possession of the land, claiming title, during the twenty years immediately preceding Gage's entry, in March, 1886, was fully sustained by the evidence. Counsel for the respective parties have in their arguments referred to and com-

mented upon the evidence of each witness, but it would serve no useful purpose to discuss the evidence of each witness in detail, and we must decline to do so.

On the trial the defendant offered in evidence a certified copy of the record of Kimball's subdivision of the north half of the north-east quarter of section 28, township 38, north, range 14, east. The court excluded the offered evidence and the defendant excepted. No part of the land in the subdivision was involved in this case, and we do not think the evidence had any bearing on the issue properly before the jury.

It appears that the Rock Island railroad was constructed across the land in question, cutting off from the twenty acres a small three-cornered tract in the northeast corner. This small three-cornered piece of land joined lands belonging to one Kimball, and it appears from the evidence that Kimball enclosed this three-cornered tract in a pasture with his adjoining lands, and soon after Eddy bought the twenty acres an agreement was made between Eddy and Kimball, under which the three-cornered tract should remain enclosed, as it had formerly been, with Kimball's lands and be used by him in connection with his own land. Under this arrangement, as appears from the evidence, Kimball used the small tract for several years and then moved away, and his land and the small three-cornered tract passed into the possession and use of other parties. For the purpose of showing that those parties who occupied after Kimball left, succeeded to the rights of Kimball and occupied as he did, plaintiff read in evidence a trust deed of Kimball and a trustee's deed conveying the land owned by Kimball to Daniel Campbell and John Lawrence, and also evidence tending to prove that the parties who succeeded to Kimball's possession occupied under Campbell and Lawrence in the same manner that Kimball occupied. The defendant objected to the introduction of the deeds mentioned, but the objection was overruled, and it is contended the

ruling is erroneous. Of course, the title to the land embraced in the deeds was not involved in this case, but the deeds were offered, in connection with other evidence, for the purpose of showing or tending to show that those in possession occupied under Kimball, and used the land in the deeds and the three-cornered tract in the same way that Kimball used the lands, and for this purpose we perceive no substantial objection to the ruling of the court admitting the deeds or the other evidence in connection with the deeds. The evidence tended to show the possession of the three-cornered tract in Eddy through others who were occupying under him and by his permission, and so far as it tended to show that Eddy was in possession of any part of the twenty acres in question it was proper.

Objection is made to instructions 1, 2, 3, 4 and 5 given for the plaintiff. These instructions are substantially like the ones given in *Sullivan* v. *Eddy*, 154 Ill. 199, and which were approved in that case.

The eighth instruction is also criticised. It is as follows:

"The jury are instructed that the fact that the number of witnesses testifying on one side is larger than the number testifying on the other side does not necessarily alone determine that the preponderance of evidence is on the side for which the larger number testified. In order to determine that question the jury must be governed by and take into consideration the appearance and conduct of the witnesses while testifying; the apparent truthfulness of their testimony or the lack of it; their apparent intelligence or the lack of it; their opportunity of knowing or seeing the facts or subjects concerning which they have testified, or the absence of such opportunity; their interest or the absence of interest in the result of the case; and from all these facts as shown by the evidence, and from all the other facts and circumstances so shown, the jury must decide on which side is the preponderance.

After fairly and impartially considering and weighing all the evidence in this case, as herein suggested, the jury are at liberty to decide that the preponderance of evidence is on the side which in their judgment is sustained by the more intelligent, the better informed, the more credible and the more disinterested witnesses, whether these are the greater or the smaller number. But the jury have no right to disregard capriciously the testimony of the larger number of witnesses, nor to refuse to give whatever consideration, in their judgment, should attach naturally to the fact that the larger number testify one way. The element of numbers should be considered, with all the other elements already herein suggested, for whatever in the judgment of the jury that element is worth, and the evidence of the smaller number cannot be taken by the jury in preference to that of the larger number unless the jury can say, on their oaths, that it is more reasonable, more truthful, more disinterested and more credible."

We perceive no substantial objection to the instruction. The appellant called more witnesses than the plaintiff, and the instruction informed the jury that they had no right capriciously to disregard the testimony of the larger number of witnesses. Surely the jury could not have been misled by anything contained in the instruction.

The fifth and last point relied upon to reverse the judgment is that the tenth instruction is erroneous. That instruction was as follows:

"The court instructs you, that if you believe, from the evidence and under the instructions of the court, that the plaintiff has proved a regular chain of title to the land in controversy in this case from the United States to William H. Eddy, with the exception of a deed from the sheriff to Erastus Bowen under the judgment recovered against Isaac N. Arnold in 1841, or a deed from Isaac N. Arnold to some one of William H. Eddy's ancestors in title, and that William H. Eddy and those under whom

he claimed title, for more than thirty years prior to the fencing of said land by defendant, Gage, in 1886, continuously exercised acts of ownership over said land, and that during all the time from the date of the execution sale, in 1842, to the time of his death, in 1884, said Arnold never claimed or asserted any title to or interest in said land or exercised any act of ownership over it, then from these facts, if you believe them to be proven by the evidence, you are entitled to presume that a deed regular in form from the sheriff to said Bowen, or a deed regular in form from said Arnold to any of William H. Eddy's ancestors in title, conveying the land in controversy in this case, was regularly executed and delivered, provided you also find, from the evidence, that there are other facts and circumstances which make it probable that such deed or deeds, regular in form, may have existed and been lost. The jury are further instructed that by the term 'acts of ownership,' as here used, is meant such acts of dominion and proprietorship over the land as were proper to the character and condition thereof, and such open conduct with respect thereto as would be ordinarily exercised by the owner thereof."

In order to understand the purpose and effect of the instruction it may be necessary briefly to refer to the record title of plaintiff as established on the trial.

The records of Cook county having been destroyed by the great fire in 1871, and the plaintiff not being able to procure the original deeds, he was compelled to rely upon an ante-fire abstract of title. It appears that the land in question was patented to Grant Goodrich, and through *mesne* conveyances the title became vested in Isaac N. Arnold. On May 15, 1841, a judgment was rendered in the circuit court of Cook county in favor of Erastus Bowen against Arnold and others, for the sum of $961.26 and costs. On March 2, 1842, execution issued on the judgment and was levied on one hundred and sixty acres of land, of which the twenty acres were a part. The

abstract of title shows that the property was appraised and sold on the 11th day of April, 1842, to Erastus Bowen, and the execution returned satisfied to the amount of $124.85. The abstract of title was made in 1857, after the time for redemption had expired, but it showed no redemption from the sale and no sheriff's deed. The abstract disclosed a regular chain of title from Bowen, the purchaser at the sheriff's sale, to plaintiff, as follows: Bowen to Cole, warranty deed, March 3, 1843; Cole to Bowen, quit-claim deed, May 26, 1844; Bowen to Dyer, warranty deed, February 26, 1850; Dyer to Clement H. DeWolf, warranty deed, January 25, 1851; DeWolf to Gallup, trust deed, December 3, 1857, given to secure notes to the order of Merrihew; Gallup, trustee, to Higgins, trustee's deed, August 3, 1860; Higgins to Merrihew, special warranty deed, September 19, 1860; Merrihew to William H. Eddy, warranty deed, February 27, 1865.

It thus appears there was a complete chain of title of record from the government to William H. Eddy, except as to the issuance of the sheriff's deed on the execution sale. For the purpose of raising a presumption of the execution of a deed for the consideration of the jury, the plaintiff introduced long-continued acts of ownership over the premises by plaintiff and his grantor, extending over a period of forty-three years, and showed facts and circumstances tending to prove the existence of the missing deed, and claimed that the evidence was competent for the consideration of the jury. As a foundation for presuming the existence of a deed from the sheriff to Bowen, Clement H. DeWolf, who purchased the land, as he testified, in 1849 and procured a deed in 1851, testified that during the ten years he held the land, from 1849 to 1860, he never heard of any one claiming the land but himself; that during the whole time he held the land he paid the taxes, twice redeeming it from tax sales,—once in 1852 and again in 1857. DeWolf, soon after his purchase, conveyed a portion of the land to the Rock Island Railroad

Company, mortgaged another part of it, and used and treated the land as absolute owner. The plaintiff, after his purchase, in 1865, went into the possession of the land under his deed as absolute owner, and so continued in possession until after the death of Arnold, in 1884. Isaac N. Arnold, who was a prominent lawyer, lived in Chicago for nearly forty-five years after the land was sold on execution to Bowen, in 1842, but so far as is disclosed by this record he never exercised any act of ownership over the land after the sale. He paid no taxes and set up no claim to the land. He died testate, but the land was not mentioned in his will, and on the inventory of his estate filed by his executor the land was not mentioned as a part of his estate. On the other hand, after the execution sale Arnold disclaimed having any interest in the land. Clement H. DeWolf testified, in substance, that at the time he purchased the land he went to Arnold's office, in the city of Chicago, at the suggestion of his brother, Calvin De-Wolf, and asked Arnold for a quit-claim deed to the property in question; that Arnold declined to give even a quit-claim deed, saying that he had no title to the land. William H. Eddy testified that he was an old acquaintance of Arnold, and that in 1865 or 1866, shortly after his purchase of the land in controversy, he met Arnold on the street in Chicago, and stated to him that he, Eddy, had been told that he ought to have a quit-claim deed from Arnold of the property in question; that Arnold said he (Arnold) had no interest in the land, but that he would give Eddy a quit-claim deed if he would come to his office; that after some conversation on other matters each passed on his way, and Eddy, as he states, thinking the matter was of no importance because Arnold told him it was not, never went to get the deed. It is also a significant fact that as early as 1873 the property in question was worth from $1000 to $1250 an acre, and yet Arnold, who appellant now claims owned the land, living

near by it and knowing that it was occupied by Eddy, set up no claim to the property.

In the discussion of presumptive evidence Starkie on Evidence (vol. 3, p. 227,) says: "Although the enjoyment be of too short a duration to constitute either an absolute bar against one who claims under a legal title, or even to furnish any technical presumption, in fact, in favor of the right, it seems that in all cases a jury may find a grant, conveyance or release in such cogent and legal, though circumstantial, evidence as is sufficient to convince their minds that a grant or other conveyance essential to the transfer, according to the nature of the property, has been actually executed." Greenleaf, (vol. 1, p. 46,) in speaking of presumptive evidence, says: "Juries are also often instructed or advised, in more or less forcible terms, to presume conveyances between private individuals in favor of the party who has proved a right to the beneficial enjoyment of the property, and whose possession is consistent with the existence of such conveyance as is to be presumed, especially if the possession, without such conveyance, would have been unlawful or cannot be satisfactorily explained." In addition to the two authorities cited we think the instruction is sustained by the following cases: *Ewing* v. *Burnett,* 11 Pet. 52; *Newman* v. *Studley,* 5 Mo. 291; *Taylor* v. *Dougherty,* 1 W. & S. 327; *Hastings* v. *Wagner,* 7 id. 215; *Clark* v. *Faunce,* 4 Pick. 245; *Ryder* v. *Hathaway,* 21 id. 303; *Jackson* v. *McCall,* 10 Johns. 380; *Jackson* v. *Lunn,* 3 Johns. Cas. 109. It will be observed, upon examination of the instruction, that the jury were not authorized to presume a conveyance from the existence of certain facts, but before they could do so they were required to find, from the evidence, that there were facts and circumstances which made it probable that a deed had existed and had been lost. The instruction was guarded, and properly so. The existence of a deed conveying said property should not be presumed except upon clear and convincing evidence.

It is assumed in the argument that no certificate of sale was filed by the sheriff, and hence it is argued, on account of the absence of a certificate of sale there is no evidence that the land was sold. We do not understand that a judicial sale of lands is proven by the production of a certificate of sale, but, on the contrary, the proper manner of proving such a sale is to produce the judgment, execution and sheriff's deed. Moreover, the abstract of title shows the land was sold. Whether the abstracter found a certificate of sale on record does not appear. The statute required a certificate of sale to be filed, and in the absence of proof to the contrary it will be presumed that one was filed.

Under all the facts as they appeared on the trial we do not regard the instruction as erroneous. But if it was erroneous, we would not be inclined to reverse the judgment on account of the instruction, because it is apparent that the jury did not predicate their verdict on the existence or non-existence of a sheriff's deed on sale on judgment in favor of Bowen against Arnold. As has been seen, the jury, under the instruction of the court, made a special finding that William H. Eddy was in the actual, open, visible, notorious, exclusive, uninterrupted and adverse possession of the land in question under claim of title, continuously, for the full period of twenty years prior to the fencing of the land by Gage, in 1886. Under this finding Eddy held the paramount title to the land as against Arnold or any person claiming under him, and under this it was a matter of no consequence whether a sheriff's deed had been made to Bowen on the execution sale or not.

We are satisfied that the judgment of the circuit court is correct, and it will be affirmed.

*Judgment affirmed.*