THOMAS LANTRY *et al.*

*v.*

BERNARD M. LANTRY.

1. STATUTE OF FRAUDS—*of establishing a trust by parol.* If A voluntarily conveys land to B, the latter having taken no measures to procure the conveyance, but accepting it, and verbally promising to hold the property in trust for C, the case falls within the fourth section of the statute of frauds, and chancery will not enforce the parol promise.

2. But if A was intending to convey the land directly to C, and B interposed and advised A not to convey directly to C, but to convey to him, promising, if A would do so, he, B, would hold the land in trust for C, chancery will lend its aid to enforce the trust, upon the ground that B obtained the title by fraud and imposition upon A.

3. DEGREE OF EVIDENCE—*to establish a trust by parol.* Even in that class of cases in which a trust can be established by parol, such evidence is not regarded with favor, and the court will not act upon it if it be not strong and irrefragable, or if it be contradicted by other testimony.

APPEAL from the Circuit Court of LaSalle county; the Hon. EDWIN S. LELAND, Judge, presiding.

This was a suit in chancery instituted in the court below, by Bernard M. Lantry against Thomas Lantry and John Twohey, to enforce an alleged parol trust. The circumstances attending the conveyance out of which the controversy arises are set forth in the opinion of the court.

The court below entered a decree declaring the existence of the trust, and enforcing its execution. The defendants thereupon took this appeal.

The principal question in the case arises on this state of facts: John Lantry, in his life time, conveyed by deed absolute in form, a tract of land to his brother, Thomas Lantry, the latter in no way procuring the conveyance to be made. The complainant, Bernard, a son of the grantor, alleges there was a parol agreement on the part of the grantee to hold the

land in trust for him, and seeks to have such alleged trust enforced.

Messrs. BUSHNELL & AVERY, for the appellants.

The deed upon its face is an absolute conveyance, and there is no evidence in writing inconsistent with the claim that it expressed the true intention of the parties. There is no proof in the record of fraud or circumvention in its execution, or of misapprehension of its legal effect; and whatever may have been the intention of the grantor at some previous time, there is no evidence of any other agreement or understanding, either before, at the time of or subsequent to the transfer, than that expressed in the deed.

Only a resulting trust, under the statute of frauds, can be proved by parol. It can not be created by contract, "and can only arise from the fact that a purchase is made in the name of one, while the *purchase money* belongs to another. *Alexander* v. *Tams*, 13 Ill. 221; *Perry* v. *McHenry*, 13 Ill. 227; *Green* v. *Cook*, 29 Ill. 193; *Loomis* v. *Loomis*, 28 Ill. 454; *Bruce* v. *Roney*, 18 Ill. 67.

The statute declares all trusts of realty created by parol agreement, unless manifested and proved by writing, "utterly void and of no effect," and verbal proof of such agreement is inadmissible. *Hovey* v. *Holcomb*, 11 Ill. 660; *Perry* v. *McHenry*, 13 Ill. 227; Story's Equity Juris. Sec. 757-758; *Skett* v. *Whitmore*, 2 Freem. 352; *Newton* v. *Preston*, Pr. Ch. 103; *Willis* v. *Willis*, 2 Atk. 71; *Rowe* v. *Teed*, 15 Ves. 373; *Evans* v. *Harris*, 2 Ves. & B. 361.

If the answer denies the existence of a parol contract, and insists upon the benefit of the statute, the case can not be made out by parol evidence, and the bar is complete. "This would seem to be sufficiently clear upon principle. But the question having one time been made, it is no longer a matter of mere principle, but stands confirmed by the highest authority." Story's Equity Juris. Sec. 758; *Whalley* v.

*Bagenal,* 6 Bro. Parl. R. 45; *Whitchurch* v. *Bevis,* 2 Bro. Ch. R. 567; *Buckmaster* v. *Harrop,* 7 Ves. 347; *Botsford* v. *Burr,* 2 Johns. Ch. R. 408; *Bartlett* v. *Pickersgill,* 4 East R. 576; *Hovey* v. *Holcomb,* 11 Ill. 660; *Perry* v. *McHenry,* 13 Ill. 227; *Alexander* v. *Tams,* 13 Ill. 221.

So well established is the principle, that "where a parol trust is set up in a bill, and the statute of frauds is interposed, its effect can not be avoided," even though the answer admit the parol agreement. Story's Equity Juris. Sec. 757; Tiffany & Bullard on Trusts, p. 15; *Flay* v. *Mann,* 2 Sum. 528; *Ontario Bank* v. *Root,* 3 Paige, 478; *Ward* v. *Dillie,* 11 Ohio, 455; *Lear* v. *Chouteau,* 23 Ill. 39; *Hovey* v. *Holcomb,* 11 Ill. 660.

Mr. OLIVER C. GRAY, for the appellee.

A court of equity will not permit the statute of frauds to be set up as a defense by a party infected with fraud, and parol trusts of real estate have frequently been established in direct contradiction to the statute, on the *ground of fraud.* For, as remarked by Lord Eldon, in 6 Ves. 69, "The principle is, that the statute shall not be used to cover a fraud." Thus, where a person obtains a gift of property upon a' parol assurance to the donor that he will dispose of it wholly or partially in a particular way, the court will compel the performance of such an engagement by converting the offending party into a trustee by way of constructive trust. Hill on Trustees, 59-144-150; Story's Equity Juris. Sec. 184; *Podmore* v. *Gunning,* 7 Sim. 649; 10 Eng. Ch. R. 241; *Hutchins* v. *Lee,* 1 Atk. 447; *Chamberlain* v. *Agar,* 2 V. & B. 262; *Pring* v. *Pring,* 2 Vern. 99; *Kingman* v. *Kingman,* Ib. 559.

In *Podmore* v. *Gunning,* 7 Sim. 646, 10 Eng. Ch. R. 241, it was held that verbal declarations of the testator to his wife, that after her decease the estate should go, by her will, to certain persons, which she promised to do, created a trust in

favor of the persons mentioned, although the testator devised the estate absolutely to his wife.

Wherever the circumstances of a transaction are such that the person who takes the legal estate in property can not also enjoy the beneficial interest without committing a fraud, the court will immediately raise a constructive trust, and fasten it upon the conscience of the legal owner, so as to convert him into a trustee for the party who is in equity entitled to the beneficial enjoyment. Hill on Trustees, 61, 144 and 150, cases cited.

Sec. 7 of 29 Car. 2, Ch. 3, is the same *verbatim* as Sec. 4 of our statute of frauds.

Under the construction uniformly given to this section, it has been held that a trust affecting realty may be raised by *parol*, notwithstanding the statute, provided the trust or confidence be "*manifested and proved*" by a *writing*.

The statute does not prohibit the *creation* of trusts of realty by *parol*, but only requires that they should be "*manifested and proved*" by a writing.

In the language of Chancellor Kent: "A trust of realty need not be *created* by writing, but it must be *evidenced* by writing." 4 Kent's Com. 305; Sugden on Vendors, ch. 15, p. 612-614; *Jackson* v. *Moore*, 6 Cowen's R. 725; T. & B. on Trusts, 12-14; Hill on Trustees, 56.

Nor is it necessary that the declaration of the trust should be contained in the same instrument conveying the legal estate to the trustee. T. & B. on Trusts, 12-14, and cases there cited.

Nor is it necessary that the writing by which the trust is manifested should be made at the time the trust is created. It may be evidenced *in writing subsequently*, and the statute will be satisfied; but it always relates back to the time of the *creation* of the trust. *Rathbun* v. *Rathbun*, 6 Barb. S. C. 106; *Jackson* v. *Moore*, 6 Cow. 725; *Forster* v. *Hall*, 3 Ves. 696; Hill on Trustees, 57-61; T. & B. on Trusts, 12; Lewin on Trusts, 63; 72 Law Library, 121; *Ambrose* v. *Ambrose*, 1

Peere Wm. 321; *Gardner* v. *Rowe*, 5 Russ. 258; *Wilson* v. *Dent*, 3 Sim. 385; *Kilpin* v. *Kilpin*, 7 Eng. Ch. R. 150; *Cripps* v. *Jee*, 4 Brown Ch. R. 350.

So a letter of the trustee acknowledging the trust satisfies the statute, and will be sufficient to establish the existence of the trust. 4 Kent's Com. 305; Story's Equity Juris. Sec. 972; T. & B. on Trusts, 23; Lewin on Trusts, 63; 72 Law Library, 121.

So an *entry in a memorandum book* or *account book*, made by the trustee, evincive of a trust, satisfies the statute, and will be sufficient to establish the trust. *Kilpin* v. *Kilpin*, 1 Mylne & Keene, 520—7 Eng. Ch. R. 150; *Cripps* v. *Jee*, 4 Brown's Ch. R. 350; *Bellamy* v. *Burrow*, Rep. T. Talb. 97; *Morton* v. *Tenart*, 2 Y. & C. Ch. Ca. 67, Sec. 77.

So where the trust is admitted in an answer in chancery. Lewin on Trustees, 63; *Hampton* v. *Spencer*, 2 Vern. 288; *Nab* v. *Nab*, 10 Mod. 404; *Cottington* v. *Fletcher*, 2 Atk. 155; *Wilson* v. *Dent*, 3 Sim. 385; *Ryall* v. *Ryall*, 1 Atk. 59.

So a recital in a bond or deed. *Moorcroft* v. *Dowding*, 2 P. W. 314; *Deg* v. *Deg*, 2 P. W. 412.


Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

The courts have gone a long way towards repealing the statute of frauds, but we think not far enough to sustain the decree rendered in this case.

The facts are very brief. The appellee, Bernard M. Lantry, was the son of John Lantry, deceased, by a divorced wife. He was born soon after the divorce, and never lived with his father. In the fall of 1859, John Lantry, anticipating his own speedy decease, conveyed to his brother, Thomas Lantry, his farm of eighty acres, by an absolute deed. Thomas Lantry swears there was no money consideration paid for the deed, but his brother expected to be taken care of, as he was ill, and told Thomas, in reply to a question whether the boy was not to have something, to do as he pleased. "If the boy is

worthy, give him what you please; if not, never look at him."
Thomas has given appellee $320 with which to purchase a
team.    On the other hand, various witnesses testify that John
Lantry, before he went from La Salle county, where he resided,
to his brother's house at Chicago, expressed the intention of
deeding the farm for the benefit of the boy, and applied to one
or two of them to take the trust.    Some admissions, rather
general in their character, are also proven against Thomas
Lantry.

The 4th section of the statute of frauds is as follows:

"All declarations or creations of trusts or confidences, of
any lands, tenements, or hereditaments, shall be manifested
and proved by some writing, signed by the party who is by
law enabled to declare such trust, or by his last will in writing,
or else they shall be utterly void, and of no effect: *Provided*,
that resulting trusts, or trusts created by construction, impli-
cation, or operation of law, need not be in writing, and the
same may be proved by parol."

It is not pretended that the alleged trust in this case is a
resulting trust, or one created " by construction, implication,
or operation of law."    It is clearly within the language of the
act, and is not denied to be so, but it is said this is one of those
cases in which courts decline to apply the statute, because, to
do so would protect a fraud.    There is a large number of cases
of this character.    Those which most nearly approach the case
at bar are cited in Hill on Trustees, p. 151, notes, 3d Am. ed.,
and in 1 Story's Eq. Jur., sec. 256, 8th ed.    The same cases are
cited by both authors, and also by the counsel for appellee.
The text in Hill, in support of which the cases are referred to,
is as follows: " Where a person, by means of his promises,
or otherwise by his general conduct, prevents the execution
of a deed or will in favor of a third party, with a view to his
own benefit, that is clearly within the first head of frauds, as
distinguished by Lord HARDWICKE, viz: that arising from

facts, or circumstances of imposition; and the person so acting will be decreed to be a trustee for the injured party, to the extent of the interest of which he has been thus defrauded."

. The language of Story, *ubi supra*, is as follows: "In the next place, the fraudulent prevention of acts to be done for the benefit of third persons. Courts of equity hold themselves entirely competent to take from third persons, and *a fortiori* from the party himself, the benefit which he may have derived from his own fraud, imposition, or undue influence, in procuring the suppression of such acts."

It will be observed, the language of these authors is carefully confined to cases where the party against whom the parol trust is established has prevented the grantor, by fraudulent promises, from adopting some other mode of accomplishing his purpose which he was about to adopt, and induced him to place it in the power of such party to convert the property to his own use. This is the exact limit of the cases cited. Thus, where a husband of the tenant in tail in remainder, by force and management, prevented the tenant in tail *in esse*, who was on his deathbed, from suffering a recovery for the purpose of providing for other parties out of his estate by will, Lord THURLOW held the estate was to be considered as if the recovery had been suffered. *Luttrell* v. *Olmins*, 11 Ves. 438, and 14 ib. 290.

So, where the issue in tail promised his father, the tenant in tail, to provide for the younger children out of the estate, and thereby prevented his father from suffering a common recovery for that purpose, equity will compel a performance of the promise. *Devenish* v. *Baines*, Prec. Ch. 4. So where an heir or residuary legatee prevents a gift of a legacy by promising to pay it. *Chamberlaine* v. *Chamberlaine*, 2 Term 34; *Oldham* v. *Lichfield*, 2 Vern. 506; *Mestaer* v. *Gillespie*, 11 Ves. 638; *Thynn* v. *Thynn*, 1 Vern. 296; *Podmore* v. *Gunning*, 7 Sim. 644.

It will be observed that in all these cases there is something more than the mere receipt of the title to real estate, with a

parol promise to hold it, subject to a trust. There is an interference with the owner of the property, by means of which he is induced to forego the execution by himself of his designs for the benefit of a third person, and to leave the execution to the party deluding him by a false promise, and through such false promise obtaining title to the property.

The cases are reviewed by Chief Justice GIBSON, in *Hoge* v. *Hoge*, 1 Watts, 213, and the rule is laid down, that, in order to create the trust, there must have been some fraud, active or passive, in procuring the deed or devise—the mere breach of a promise to convey is not sufficient.

So, in *Perry* v. *McHenry*, 13 Ill. 236, this court said: "If the refusal to comply with a parol agreement constitutes such a fraud as to take a case out of the statute, then no case is within it; for a party has only to allege that a person contracting by parol fraudulently refuses to comply with the terms of his parol agreement, which he must do in every case, or there would be no necessity for resorting to a court of equity to enforce it, and a case is made to which the statute does not apply."

The distinction is this. If A voluntarily conveys land to B, the latter having taken no measures to procure the conveyance, but accepting it, and verbally promising to hold the property in trust for C, the case falls within the statute, and chancery will not enforce the parol promise. But if A was intending to convey the land directly to C, and B interposed and advised A not to convey directly to C, but to convey to him, promising, if A would do so, he, B, would hold the land in trust for C, chancery will lend its aid to enforce the trust, upon the ground that B obtained the title by fraud and imposition upon A. The distinction may seem nice, but it is well established. In the one case B has had no agency in procuring the conveyance to himself. In the other he has had an active and fraudulent agency. In the one case he has done nothing to prevent a conveyance to the intended beneficiary.

In the other he has, by false promises, diverted to himself a conveyance about to be made to another.

Giving to the evidence all that can be claimed for it, the present case only comes in the first category. There is not a particle of evidence tending to show that Thomas Lantry ever uttered a word to induce the conveyance from his brother to himself, or to prevent a conveyance from his brother to appellee. On the contrary, the evidence indicates that John Lantry at no time intended a conveyance directly to his son; and conceding to the evidence its utmost effect in favor of appellee, it appears John Lantry went to Chicago and asked his brother to accept the trust.

But, apart from the difficulty created by the statute, the evidence is extremely unsatisfactory, and the rule is, that even in that class of cases in which a trust can be established by parol, such evidence is not regarded with favor, and the court will not act upon it if it be not strong and irrefragable, or if it be contradicted by other testimony. Hill on Trustees, 167, and cases cited in notes. The evidence in this case shows merely what intentions John Lantry expressed before he went to Chicago—which he may have wholly changed—and some very indefinite statements testified, by one witness, to have been afterwards made by Thomas Lantry. There is no direct evidence that he ever made even a parol promise to hold the property in trust, and he denies, in his own testimony, that he ever did.

To the account put in evidence showing his expenses in regard to the land we can attach no material consequence. It is consistent with his own statement that the land was deeded to him by his brother to be used, so far as he might deem advisable, for the benefit of the boy, and no further.

The decree must be reversed and the cause remanded.

*Decree reversed.*