LOUISA BRADY *et al.*

*v.*

MICHAEL HUBER.

*Opinion filed June 19, 1902.*

1. DEEDS—*recording of deed raises rebuttable presumption of delivery.* The execution and recording of a deed raise the presumption, in law, that the grantor intended to divest himself of title, and unless such presumption is rebutted it must be held the deed was delivered.

2. SAME—*when presumption of delivery is conclusive.* If a grantor executes a deed to his daughter to place the property beyond the reach of creditors, with the knowledge and consent of the grantee, and records the same, with her consent, for the purpose of making the conveyance effective against creditors, the grantor is concluded by the presumption of delivery arising from recording.

3. SAME—*when courts will not aid either party to enforce conveyance.* If a father deeds property to his daughter for the purpose of hindering or defrauding creditors, courts will not lend their aid to enforce an alleged parol promise by the grantee to hold the property in trust, nor, if the grantor and grantee are *in pari delicto,* will they afford any remedy to the grantee to disturb the grantor's possession of the property.

4. TRUSTS—*when parol promise to hold land in trust will not be enforced.* The rule that a parol promise to hold land in trust will be enforced in chancery where fraud has been practiced by the grantee upon the grantor, does not apply where the deed was made for the purpose of defrauding the grantor's creditors.

APPEAL from the City Court of Alton; the Hon. SILAS COOK, Judge, presiding.

DUNNEGAN & LEVERETT, for appellants.

JOHN G. IRWIN, and B. J. O'NEILL, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a bill in equity filed by appellee, wherein it was prayed that upon final hearing a decree be entered vacating and declaring null and void a certain deed executed by the appellee, dated on the 18th day of March, 1899, purporting to convey to his daughter, Louisa, (now

Louisa Brady,) one of the appellants, a certain parcel of land in Charles Howard's addition to the city of Alton, twenty feet in width, fronting on the north side of Seventh street, thence extending north one hundred feet; or, in the alternative, for a decree creating a lien on said premises to provide for the comfort, support and medical care of the appellee, the complainant, during his natural life. On a hearing upon bill, answer and replication, a decree was entered ordering and decreeing that the deed for the property in the bill mentioned be so reformed and corrected as to reserve to the appellee, the grantor, the sole and exclusive possession, use and enjoyment of the premises for and during the time of his natural life, upon condition that the said grantor pay all taxes and assessments against the same during his life and keep the same in proper repair, and do not suffer or permit waste to said premises while so held by him for life.

It appeared from the testimony that on the said 18th day of March, 1899, the appellee, a widower, and the appellant his daughter, (now Louisa Brady,) lived together in a dwelling house on the premises in Alton, described in the deed sought to be reformed by the bill. The father was the owner of the premises in Alton and also of a tract of land in St. Charles county, Missouri. He was involved in some manner of litigation, the nature whereof is not disclosed. He desired to put the title to his property where it would not be endangered by an adverse determination of the litigation. He executed two deeds to his daughter, one conveying to her the premises in the city of Alton and the other the lands in Missouri. The theory upon which the appellee asks an affirmance of the decree is, that the appellant Louisa Brady, by arousing the fears of the appellee as to the possible adverse result of the litigation in which he was involved, and by repeated importunities, induced the appellee to execute the deeds to her after many repeated promises upon her part to re-convey the property to him at any

time upon his request, and that the appellee did not deliver to said appellant either of the deeds, but that both deeds, though recorded, remained in his possession until the 26th day of July in the same year; that the appellant Louisa Brady was about to be married to her co-appellant, John Brady, and the appellee on said 26th day of July demanded that she should re-convey both pieces of property to him; that she refused, but finally said she would re-convey to him the Missouri land but not the Alton property, but she told him that the house should be his as long as he lived; that appellant Louisa then executed a deed re-conveying to the appellee the land in Missouri, and he accepted it with the understanding the Alton property was to be his as long as he lived; that with this understanding he then delivered to her the deed for the property in Alton; that on the day following this, his daughter, Louisa, and said John Brady were married, and on her application appellee permitted her and her husband to take up their home with him in the dwelling house on the Alton property, and that they entered into an agreement that she was to board him and take care of him as long as he lived, in consideration of the use of the premises; that after complying with this promise and understanding for about a year and a half, appellant and her husband separated and she returned to him the deed for the Alton property; that later the daughter and her husband became reconciled and took up their home elsewhere; that appellee rented the house and Alton property to the appellant Morgenroth, and the appellant Louisa notified the said Morgenroth to quit and give up possession to her.

The argument of counsel for the appellee is, the decree should be upheld on the ground the execution of the deed was procured by fraud and imposition, and the delivery thereof procured on a parol promise to hold the land in trust for the grantor, and that chancery will lend its aid to enforce the trust. Counsel do not contend that

a mere breach of the promise to re-convey is sufficient to create a trust that equity would enforce, but insist that the fraud alleged to have been exerted in procuring the deed, in connection with the promise and breach thereof, warrants equitable interference.

The bill does not charge that the appellee was induced to sign and have the deeds recorded by any species of fraud or imposition. The answer avers the deeds were delivered when made, denies the alleged oral contract was made, but does not plead the Statute of Frauds. We think it must be held the deeds were delivered at the time of the making thereof. The evidence shows two deeds from the father to the daughter were executed at the same time, one conveying to her the property here involved,—the Alton property, in Madison county, Illinois,—and the other the land in the county of St. Charles, in the State of Missouri; that the appellee, her father, sent the appellant, the daughter, with the deed to the Missouri land, to St. Charles, to be filed for record, and that he took the other deed to Edwardsville, the county seat of Madison county, and filed it with the recorder to be recorded. Both deeds were duly recorded. The appellee testified the deeds were both returned to him by mail by the respective recording officers, and the appellant his daughter swears they were sent to her by such officers. The execution and recording of the deed here involved, by the appellee, raise the presumption, in law, that he intended to divest himself of title, and unless such presumption is rebutted it must be held the deeds were delivered. (9 Am. & Eng. Ency. of Law,—2d ed.— p. 159, and many cases decided in this court, cited in note 4.) In *Union Mutual Life Ins. Co.* v. *Campbell*, 95 Ill. 267, we said (p. 284): "The mere act of recording, alone, as we have seen, is but *prima facie* evidence of a delivery and liable to be rebutted; and it is successfully rebutted, as all the cases agree, when it is shown that the deed was not in the nature of a family settlement or of a gift

to a minor, (as to which hereafter,) but is intended to confer no benefit upon the grantee, and its execution and recording are wholly unknown to him until after the death of the grantor." In *Weber* v. *Christen*, 121 Ill. 91, we said (p. 97): "We think, in the case of an adult grantee, the acknowledging and recording of the deed without his knowledge or consent does not, of itself, according to the weight of authority, amount to a delivery." In *Sullivan* v. *Eddy*, 154 Ill. 199, we held the presumption of delivery arising from the registration of a deed had been successfully rebutted by proof, among other things, that the grantee was ignorant of the execution and recording of the deed and claimed nothing under it.

Acceptance by the grantee is a constituent element of the delivery of a deed, and it will be observed that in all the cases cited the absence of knowledge on the part of the grantee has been noted as a circumstance tending to rebut the presumption of delivery which arises from the registration of the deed. Acceptance may be presumed, but if the grantee is *sui juris* the presumption of acceptance does not necessarily arise, and in such cases it may be shown, in rebuttal of the presumption of delivery which arises from registration of the deed, that the execution and recording of the deed were acts of the grantor alone, unknown to and unauthorized by the grantee. But here no question of acceptance can arise. It appeared without dispute the appellee, influenced by the fear that his lands might be seized by a creditor, executed a conveyance thereof to his daughter with intent to divest himself of title so that it would be beyond reach of his creditors; that the deed imposed no burden on the grantee, but was without condition or qualification and was beneficial to her; that the daughter, the grantee, well knew of the execution of the deeds and consented that the conveyances should be made to her, and that the grantor, with the knowledge and consent of the grantee, placed the deed upon the public records, with the

intent it should be deemed and taken by his creditors as a completed and effective conveyance of the premises. Under such circumstances the grantor must be deemed concluded by the presumption of delivery which arises from the recording of the deed. (*Walton* v. *Burton*, 107 Ill. 54; *Thompson* v. *Dearborn*, id. 87; *Moore* v. *Giles*, 49 Conn. 570.) Manual delivery by the grantor to the grantee is not essential. *Rivard* v. *Walker*, 39 Ill. 413; *Rodemeier* v. *Brown*, 169 id. 347.

It is a rule having universal recognition, that though creditors of a fraudulent grantor may invoke the aid of the courts to have a conveyance made for the purpose of hindering and delaying them in the collection of their demands declared inoperative as against their rights and interests, the law will not provide a remedy which either of the guilty parties, if *in pari delicto*, can avail of against the other, either to disturb or enforce the conveyance. A court of equity will not lend its aid to the grantor to cancel the deed, or reform it so as to show the verbal contract of the grantee, or to enforce any agreement to re-convey, or declare that any trust or confidence has grown out of the conveyance. (*McElroy* v. *Hiner*, 133 Ill. 156; 14 Am. & Eng. Ency. of Law,—2d ed.—278.) Nor will a court of law entertain a legal action brought by the fraudulent grantee against the grantor to recover possession of the property so fraudulently conveyed. (*Kirkpatrick* v. *Clark*, 132 Ill. 342.) The law, in such cases, refuses to aid either party, but leaves them where it finds them.

Counsel for appellee cite *Lantry* v. *Lantry*, 51 Ill. 458, *Biggins* v. *Biggins*, 133 id. 211, *Gruhn* v. *Richardson*, 128 id. 178, and *Williams* v. *Williams*, 180 id. 361, in support of the proposition announced in that behalf, that "where the party to whom a deed absolute is made obtains the execution and delivery thereof to himself by fraud and imposition upon the grantor, on a parol promise to hold the land in trust for the grantor, chancery will in such case lend its aid to enforce the trust." The doctrine taught

in the cases cited is, that though the Statute of Frauds requires that all declarations or creations of trust shall be manifested in writing, yet where a grantee has obtained the execution of the deed by fraud and imposition upon the grantor, a parol promise to hold the land in trust will, because of the fraud and imposition so practiced on the grantor, be enforced in chancery. This rule is applicable to conveyances made by the grantor in trust for lawful purposes,—not to cases, such as the one at bar, where the parol promise or undertaking is to hold the title for the grantor in order that his creditors may not be able to have it applied to their demands, or to re-convey to him when that illegal purpose has been accomplished.

There is no foundation on which to base an insistence the parties to the conveyance under consideration were not *in pari delicto.* There is no suggestion in the testimony the father was in any way deficient in body or mind, or that he was afflicted by disease or enfeebled by age, or that the daughter was in any respect his superior. His testimony that she suggested that he should convey his property to her to avoid the possible adverse result of the litigation in which he was involved, and that she "bothered him" repeatedly about the matter, is all that appears tending to show that she took the initiative in the matter. This is denied by her, and even if true would not be sufficient to relieve him from the position of a party *particeps criminis.* The testimony altogether shows his was the controlling mind during the course of the completion of the fraudulent transaction and that she was obedient to his direction and control. Afterwards she became engaged to be married, much to his displeasure. He demanded she should re-convey both of the properties to him before the celebration of the marriage, partly for the reason he disliked her intended husband and was opposed to the marriage, but he also urged as an additional reason that her intended was a minor

and could not join with her in re-conveying to him, and that for that reason she could not, after the celebration of the marriage, comply with her agreement to return to him the title to the premises.

The court erred in decreeing that the deed should be reformed. The bill should have been dismissed. Neither courts of law or in equity afford him a remedy to reform or cancel the deed or restore the title to him, or any remedy to her to disturb him in the possession of the property.

The decree will be reversed and the cause will not be remanded.                              *Decree reversed.*