(No. 13951.—Decree affirmed.)

LUTHER C. STREETER *et al.* Appellees, *vs.* MARY E. GAMBLE *et al.*—(HORACE M. CAMPBELL, Appellant.)

*Opinion filed June 22, 1921.*

1. TRUSTS—*fraud must be present to give rise to constructive trust.* To establish a constructive trust there must be some element of fraud, either positive or constructive, which existed at the time of the transaction, or a confidential relation and influence, by virtue of which one has obtained the legal right to property which he ought not by the rules of equity and good conscience to hold and enjoy.

2. SAME—*evidence to establish constructive trust must be clear and convincing.* Where it is sought by parol evidence to disturb long-standing titles and establish a constructive trust the courts require such convincing proof as leaves no reasonable doubt of the existence of the facts; and there is added force to the rule where the delay has been so long that the death of witnesses and the loss of evidence render it practically impossible to make a defense.

3. SAME—*when cross-complainant, because of long delay, is not entitled to set up constructive trust.* In a suit by executors asking the court to appoint them as trustees under a will which provides for the creation of a trust estate and the payment of the income therefrom to the testator's son during his life, the son cannot maintain a cross-bill setting up a constructive trust by allegations that he had conveyed the property to his father upon the father's prom-

ise to re-convey to him when the son's financial difficulties were settled, where more than fifteen years has elapsed since said settlement was made, during eleven years of which period the father was living.

APPEAL from the Circuit Court of Kankakee county; the Hon. ARTHUR W. DESELM, Judge, presiding.

E. P. HARNEY, for appellant.

J. BERT. MILLER, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellees, Luther C. Streeter and Edwin Gamble, Jr., executors of the last will and testament of Francis S. Campbell, deceased, filed their bill in this case in the circuit court of Kankakee county, making Mary E. Gamble, heir-at-law, and the beneficiaries under the will, including the appellant, Horace M. Campbell, defendants, and asking the court to appoint complainants trustees under the sixth clause of the will, which devised 172 acres of land to the executors in trust for Horace M. Campbell during his life, with remainder to the children of Mary E. Gamble. All the defendants were defaulted except Horace M. Campbell, who answered, admitting that Francis S. Campbell made the will and died leaving the heirs, devisees and legatees named in the will, but denying that he was the owner of the 172 acres which he attempted to devise by the sixth clause of the will, and he filed a cross-bill, alleging that the testator held the title as trustee for him. The cross-bill was answered and the evidence was heard by the chancellor. A decree was entered dismissing the cross-bill and granting the relief prayed for in the original bill, and from that decree Horace M. Campbell appealed.

On August 25, 1885, Francis S. Campbell and wife conveyed the tract of land in question to the appellant, Horace

M. Campbell, in consideration of one dollar and the payment of a mortgage of $1000 to Jane Hicks. In 1887 that mortgage was released and a new mortgage for the same amount was executed by appellant. In 1890 the mortgage given in 1887 was released and a new mortgage for the same amount was given to Jane Hicks. In 1886 the appellant borrowed $1000 from E. S. Durham and gave him a mortgage to secure the loan, and in 1890 that mortgage was released and a new one given. On June 20, 1896, the appellant gave a mortgage for $750 on the greater part of the tract. In August, 1898, there were four judgments against the appellant and executions had been levied on the real estate. Laurel L. Love had brought suit against the appellant in the circuit court for breach of promise of marriage alleging damages of $10,000, and because of the mortgages, judgments and Love suit the banks refused to loan the appellant any money. On August 29, 1898, Francis S. Campbell, father of the appellant, was living on his farm of 156 acres in Kankakee county and on that day the appellant conveyed the tract in question to his father. The appellant was in business in Chicago, and Francis S. Campbell took possession, paid the liens, furnished money to settle the suit and paid the taxes up to the date of his death. At the time of the conveyance to Francis S. Campbell he had three children,—Horace M. Campbell, the appellant, Lewis J. Campbell and Mary E. Gamble. On August 25, 1914, Francis S. Campbell made his will, and Lewis J. Campbell had died before that time, leaving three children. The will provided for the payment of funeral expenses and debts and contained bequests of $100 to a cemetery association and $500 to Sarah E. McKinstry, the testator's housekeeper. By the fourth clause the testator gave to his daughter, Mary E. Gamble, her choice of any two mares and two cows, giving as his reason that he had already given her a deed of his home farm, containing 156 acres, which would come into her possession at his death. He also gave a bequest

of $10 to each of the children of Lewis J. Campbell, explaining that he had already given Lewis, during his lifetime, an amount which he considered equal to a sufficient share of his estate. By the sixth clause he devised to his executors all the residue of his estate, real, personal or mixed, of every kind or nature, in trust for the appellant, and the trustees were directed to pay the net income annually to appellant during his life, and by the seventh clause the remainder after the life estate was to be conveyed to the three grandchildren, children of Mary E. Gamble. Francis S. Campbell died on November 22, 1915, and the will was admitted to probate. After his death the executors paid to the appellant the income from the farm in accordance with the will up to the time the bill was filed, on December 2, 1919. A cut-over tract of land in Michigan, which was of very little value and produced no income, was conveyed to the appellant in fee. The breach of promise suit was settled for $1000, and that was the amount paid.

There were two obstacles to granting relief to the appellant on his cross-bill. The ground for relief alleged was that the facts raised a constructive trust, which arises when a person clothed with some fiduciary character by fraud or otherwise has gained something for himself. There must be some element of fraud, either positive or constructive, which existed at the time of the transaction, or a confidential relation and influence, by virtue of which one has obtained the legal right to property which he ought not, according to the rules of equity and good conscience, to hold and enjoy. Where such a trust *ex maleficio* is alleged, the facts which raise the trust must be proved by clear and convincing evidence. The evidence to prove the trust must be clear, strong, unequivocal and unmistakable and lead to but one conclusion. Where it is sought by parol evidence to disturb long-standing titles and establish a constructive trust, the courts require such convincing proof as leaves no reasonable doubt of the existence of the facts; and there

is added force to the rule where the delay has been so long
that the death of witnesses and the loss of evidence ren-
der it practically impossible to make a defense. (*Lantry*
v. *Lantry,* 51 Ill. 458; *Pope* v. *Dapray,* 176 id. 478; *Stahl*
v. *Stahl,* 214 id. 131; *Wright* v. *Wright,* 242 id. 71; *Ryder*
v. *Ryder,* 244 id. 297; *Wells* v. *Messenger,* 249 id. 72;
*Gillette* v. *Plimpton,* 253 id. 147; *Lord* v. *Reed,* 254 id.
350; *Kern* v. *Beatty,* 267 id. 127; *Hinshaw* v. *Russell,* 280
id. 235; *Baughman* v. *Baughman,* 283 id. 55; *Delfosse*
v. *Delfosse,* 287 id. 251.) The evidence for the appellant
did not meet this requirement.

The only substantial evidence offered to sustain the
charges of the cross-bill was the testimony of Sarah E. Mc-
Kinstry, the housekeeper mentioned in the will, who had
lived with Francis S. Campbell eighteen years. Everybody
else who knew anything about the transaction, except the
appellant, was dead. Lewis J. Campbell, who was present
when the arrangement was made for the conveyance by
the appellant to his father, the attorney who drew the deed
and who acknowledged the stipulation settling the breach
of promise suit, and the attorney who drew the will and
whom the appellant consulted relative to his rights, were
dead. Sarah E. McKinstry testified by deposition and also
on the hearing before the chancellor, and she became much
more proficient as a witness for appellant on the hearing
than when the deposition was taken. Taking the oral testi-
mony and her deposition together, her statements amounted
to this: That Horace M. Campbell and his brother, Lewis,
came to the home of Francis S. Campbell, and she over-
heard a conversation in which Horace said to his father
that he had got to have some money,—that there was a
mortgage coming due and he could not get any money; that
Francis said he would take the land and appellant should
deed it over to him; that Lewis said, "If Horace deeds it
over to you, will you deed him back his farm when every-
thing is settled up?" that Horace asked his father the same

question, and he said he would, and the deed was made; that two months or so after the deed was made Francis had papers drawn up by a lawyer who is now dead, for the appellant to sign away his rights, and the witness warned him not to do it,—not to sign anything; that the appellant afterwards came to his father and told him that he promised to deed the farm back; that he gave Mary her farm, and now he wanted him to deed his farm as he promised to do; that this was in July or August, 1915; that when the deed was made to Francis, Lewis said the Love woman had sued appellant and he was going to deed the land to Lewis, and Francis told appellant not to make a deed to Lewis, but to him; that she heard conversations a great many times between appellant and his father about deeding the land back when the father told him he would deed it back; that they had quite a few set-to's about the property, and appellant said that his father agreed to deed him back the farm when the trouble was all settled; that they finally got quiet after that and the father said he would deed it back, and the witness said to the father, "Why don't you do as you agreed? You know you agreed to give him back his farm; why don't you do it?" that appellant and his father sometimes had quite a few words over it, and finally would get settled up again and the father would agree to deed it back; that the father and appellant had a great many jangles about it—she judged about one dozen times, anyway.

The ground for claiming the existence of a constructive trust was that Francis S. Campbell obtained the legal title to the land by virtue of a confidential relation and influence, under such circumstances that he ought not, according to the law of equity and good conscience as administered in chancery, hold and enjoy the beneficial interest in the property, and if such a trust was created it came into existence at the time the deed to him was made. According to the testimony of Sarah E. McKinstry, Francis S. Campbell always

disputed the claim of the appellant, and nothing that she testified to would justify an inference that Francis ever admitted that the deed was made as claimed by the appellant, but only that he yielded to the importunities of appellant and promised to re-convey. Everyone who knew anything about the transaction when it was claimed that the trust arose, except the appellant and the witness, had died, and it was practically impossible to make any defense against the claim. All that the witness testified to subsequent to the transaction may as well be reconciled with the theory that Francis yielded to appellant's pleas to be treated as well as his sister, Mary, to whom a farm had been given, rather than that Francis took the title as a trustee.

The second objection is that the appellant allowed his claim to lie dormant for an unreasonable length of time and set up no claim during the lifetime of the alleged trustee or while those participating in the transaction adverse to his claim were alive. There was no allegation in the bill or evidence which justified the long delay. It could not have been that on account of the relations between the appellant and his father he forbore to assert his rights in court, because what evidence there was showed that there were controversies and continuing disputes between them about the matter. The appellant delayed filing his bill for more than fifteen years after the final settlement and adjustment of the breach of promise case and more than eleven years after the settlement before his father's death. He had knowledge of all the facts, and the rule that equity will only assist those who are diligent in asserting their rights must be applied. *Collier* v. *Beers,* 106 Ill. 150; *Howe* v. *South Park Comrs.* 119 id. 101; *Ferns* v. *Chapman,* 211 id. 597; *Wilcoxon* v. *Wilcoxon,* 230 id. 93; *Blaul* v. *Dalton,* 264 id. 193.

The decree is affirmed.                    *Decree affirmed.*