(No. 22012.— )

Mary Patten, Appellee, *vs.* Peter Knowe *et al.* Appellants.

*Opinion filed October 21, 1933—Rehearing denied Dec. 14, 1933.*

David & Fainman, and Judah, Reichmann, Trumbull & Cox, (Sigmund W. David, and S. Albert Stern, of counsel,) for appellants.

CUTTING, MOORE & SIDLEY, (CHARLES S. CUTTING, and HOWARD NEITZERT, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Mary Patten, complainant, filed a bill in chancery in the circuit court of Cook county against Peter Knowe, (individually and as administrator of the estate of Charles H. Patten, deceased,) Elode M. Patten and Charles R. Patten, to set aside a certain quit-claim deed and to direct the administrator to deliver to her the contents of two envelopes found among the effects of decedent after his death. Upon the hearing the chancellor entered a decree in accordance with the prayer of the bill. The cause is in this court on appeal prosecuted by the widow and by Peter Knowe, individually and as administrator.

Charles H. Patten (hereinafter referred to as decedent) died intestate on March 30, 1929, leaving surviving him Elode M. Patten, his widow, Mary Patten, his daughter and complainant, and the defendant Charles R. Patten, his grand-son, his only heirs-at-law. The bill alleges that complainant owns in fee simple certain real estate at Palatine, in Cook county, originally the property of her mother, who was her father's first wife; that on the death of her mother complainant and Paul Patten became the owners of the property; that they subsequently conveyed it to her father; that he and Elode M. Patten, his wife, conveyed it to complainant by deed dated June 27, 1922, recorded October 14, 1927; that she agreed with decedent to permit him to occupy the property during his lifetime and he was to pay the taxes and insurance thereon for its use; that it was her intention and desire that in case she should die before his death the premises would become his property; that it was also agreed between them that she would execute a quit-claim deed to him for the premises but it was not to be delivered unless she pre-deceased him; that a quit-claim deed was executed and placed with other papers of com-

plainant in a sealed envelope, upon which the father wrote the following: "Property of my daughter, Mary Patten, to be delivered to her in case of my death.—C. H. Patten.— 10/30/27;" that the envelope so marked and sealed was placed in another sealed envelope with various papers belonging to complainant; that upon the outer envelope, in the handwriting of decedent, appear these words: "Property of my daughter, Mary Patten, held for safekeeping, to be delivered to her in case of my death.—C. H. Patten.— 11/9/28;" that the deed from complainant to her father was never delivered but was held by him in his safety deposit box for safekeeping; that the conditions under which decedent was to receive such deed never arose, because he died before complainant's death; that after his death, and against her protest, Knowe, the administrator, recorded the deed, thereby clouding her title. The bill further alleged that among the papers contained in the envelopes was a promissory note to decedent for $10,000 signed by complainant, and that it had never been delivered to decedent except for safekeeping, and was, in fact, her property and did not belong to the estate.

The answer of Knowe and Elode M. Patten denies that the property originally belonged to complainant's mother and alleges it was owned by decedent prior to the time complainant's mother acquired any interest therein; denies that decedent and Elode M. Patten, his wife, conveyed the premises to complainant by deed dated June 27, 1922; admits that decedent signed the deed but alleges that Elode M. Patten did not sign it until some time in October, 1927; that it was never delivered to complainant and always remained in decedent's possession; that it was not executed with the understanding alleged in the bill or with any similar understanding, but was executed for the purpose of having the title appear temporarily in complainant; that before it was recorded decedent required complainant to execute and deliver to him a quit-claim deed to the prem-

ises; that Elode M. Patten was induced to sign the deed to complainant on the representation that no title would be conveyed and the deed would never be delivered; that complainant would execute a quit-claim deed to decedent, which was done, and that Elode M. Patten would have access to and could record the deed at any time, and the property would be hers and her husband's, to enjoy as they saw fit. The answer denies that the note and deeds found in the envelopes belong to complainant. It alleges the delivery of the note and deed to decedent without condition; that even if the note was not delivered it was for an adequate consideration and complainant owes the estate the amount thereof; that complainant has no interest in the premises except as an heir-at-law of decedent; that after the deed from complainant and her brother was delivered, decedent and Elode M. Patten moved into the premises and remained in possession as sole owners, and that decedent made extensive additions and improvements thereto and in all manner acted as owner thereof, and that complainant had full knowledge of such facts and raised no objections. The answer denies that complainant is entitled to any relief and prays that the bill be dismissed for want of equity.

The testimony on the part of complainant shows that after decedent's death the two sealed envelopes, marked as alleged in the bill, were found in his safety deposit box. In the outer envelope was the other sealed envelope and four fire insurance policies issued to decedent covering the buildings on the premises and the furniture in the dwelling house. One of the policies was dated November 12, 1927. All of them bore written assignments to complainant under date of January 24, 1928. The inner envelope contained the quit-claim deed from decedent and Elode M. Patten to complainant dated June 27, 1922, bearing an acknowledgment of the same date and recorded October 14, 1927. On the outside of the deed appear the words, "Mail to

C. H. Patten, Palatine, Ill." The inside envelope also contained the quit-claim deed from complainant to decedent, dated and acknowledged October 14, 1927, and the promissory note dated June 27, 1927, for $10,000, signed by complainant and payable to the order of decedent. The note bears the endorsement, "Interest paid to January 27, 1932.— C. H. Patten," in his handwriting.

Complainant's proof showed that her mother died intestate on May 11, 1911, vested with record title to the premises in controversy, and that complainant and her brother conveyed the premises to decedent by deed dated March 2, 1914, recorded May 9, 1922. Defendants' proof showed that decedent was the original owner of the property, having purchased a portion of it in 1890 and the remainder in 1896. In 1906 he caused the title to be transferred to his first wife, where it remained until re-conveyed to him by his two children after her death. Decedent and Elode M. Patten occupied the premises from July or August, 1922, until his death. During that time he made extensive improvements on the premises at his own expense, paid the insurance, taxes and assessments, called the property his own, and for two or three years prior to his death attempted to sell it as owner. He priced it at $32,500. Exclusive of the property here involved the net assets of his estate amounted to about $6000. He had a safety deposit box at the Northern Trust Safe Deposit Company from February, 1915, to the time of his death. Complainant had access to the box until February 3, 1920, when the right was canceled. Elode M. Patten had access to the box from January, 1925, until decedent's death. Complainant had a safety deposit box in her own name at the same institution from June 16, 1915, until after decedent's death.

Complainant contends that the notations on the envelopes were made by her father to distinguish her property from his and show that the property in the envelopes was hers; that when the papers were enclosed in the envelopes

they immediately passed into her possession and were held by her father for safekeeping, only; that the execution, acknowledgment and recording of the deed to her raise a presumption of delivery, which is strengthened by the lapse of time between its execution and recording. In support of her claim that the deed to her was delivered and that the note and deed from her to her father were not delivered, she contends that the deeds were found in her possession; that the fire insurance policies were assigned to her after the other papers were sealed in an envelope for safekeeping, and that both envelopes were marked to denote what was her property. Entries or memoranda made by a decedent against his interest, found in his books or papers, are, in general, admissible against his estate in favor of a party seeking to establish their truth. They are presumably truthful. Their probative force depends upon the circumstances. No conclusive presumption arises from such memoranda and they may be outweighed by other facts and circumstances in evidence. (*Gallagher* v. *Brewster*, 153 N. Y. 364, 47 N. E. 450; *Miller* v. *Silverman*, 247 N. Y. 447, 160 N. E. 910.) Under the allegations of her bill it was incumbent upon complainant to establish that the deed to her from decedent and Elode M. Patten was delivered. Her proofs showed that it was found in the inner sealed envelope, and that the insurance policies were assigned to her after the date of the inscription thereon.

The execution and recording of a deed sometimes raises a presumption of delivery. (*Brady* v. *Huber*, 197 Ill. 291; *Harshbarger* v. *Carroll*, 163 id. 636.) It is urged that the presumption is very strong in case of a voluntary settlement by a father upon his children. (*Mitchell* v. *Mitchell*, 328 Ill. 136.) But the testimony in this case does not show a voluntary settlement. The re-conveyance executed by complainant to her father rebuts the claim of a voluntary settlement. Although decedent procured the recording of the deed to complainant, paid the recording fee and the deed

was returned to him, there is no testimony which tends to show it was ever out of his possession except while being recorded. In the case of an adult grantee, the acknowledgment and recording of a deed without his knowledge or consent do not, of themselves, prove delivery. (*Sullivan* v. *Eddy,* 154 Ill. 199; *Creighton* v. *Roe,* 218 id. 619.) The only evidence tending to show that complainant had any knowledge of the existence of the deed to her is her re-conveyance of the property to decedent.

Regardless of whether the deed to complainant was executed in 1922 or in 1927, decedent occupied the property and treated and spoke of it as his own from 1922 until his death. He paid the insurance, taxes and assessments, made improvements thereon and repeatedly offered it for sale. All the insurance policies were issued in his name after the date of the deed to complainant. One of them was issued after she re-conveyed the property and none of them were assigned to her until the year 1928. Three of them covered decedent's furniture and the assignments carried his interest in all property. Decedent's conduct shows that he did not intend to divest himself of ownership of the premises. The testimony tends to show that he at all times retained the deed in his possession, continued to control the property and in every respect maintained his former relation toward it as owner. Complainant neither made nor offered any proof to support the allegation that her father occupied the premises by her permission, nor did she explain why the assignments of the insurance policies covered his furniture. So far as the record shows, complainant never made any claim of ownership of the premises until after her father's death. Whatever may have been the motive for the two conveyances is undisclosed by the record. A deed must take effect upon its execution and delivery or not at all. If a grantor retains custody or control over it there is no valid delivery. *Shipley* v. *Shipley,* 274 Ill. 506; *Russell* v. *Mitchell,* 223 id. 438.

We are of the opinion that complainant has failed to establish delivery to her of the deed from decedent and Elode M. Patten or that it was in decedent's possession for safekeeping, only.

The deed from complainant and the note were found in the decedent's safety deposit box. It is therefore to be presumed that there was a delivery to him. (*Maule* v. *Maule,* 312 Ill. 129; *Hunter* v. *Harris,* 131 id. 482.) It is contended that the memoranda on the envelopes overcome that presumption. The note bears an interest credit in the handwriting of decedent. He necessarily had physical possession of the note at that time.

Complainant also insists that the contents of the envelopes were technically in her possession on the theory that the delivery of a sealed package for safekeeping is not a delivery of the contents. In the upper left-hand corner of the inner envelope is printed the business card of the Lake Zurich Milk Company, with which decedent was connected. The natural inference is that he furnished the envelope. There is no direct testimony as to who sealed it, but he credited the note, wrote the inscription on the outside of the envelope and retained it in his custody. The testimony tends to show that he sealed it. No reason is advanced to show why, if complainant was the owner of the deed and note, she did not keep them in her own safety deposit box instead of allowing decedent to retain them in his box, to which her access had been canceled in 1920. It is also to be observed that the note was not indorsed by decedent. The weight of the testimony supports the presumption that both the deed and the note were delivered to decedent.

It is insisted that the effect of the notations on the envelopes is to estop defendants from denying complainant's title to the contents. Such recitals are not conclusive and testimony to rebut them is admissible. *Gallagher* v. *Brewster, supra; Miller* v. *Silverman, supra.*

164

Complainant does not claim the deed and note were attempted gifts, and it is unnecessary to consider whether or not decedent contemplated making a gift to her either *inter vivos* or of a testamentary character.

Upon a consideration of the whole record we are of the opinion that complainant has failed to establish the allegations of her bill, and that the chancellor erred in entering the decree.

The decree is reversed and the cause remanded, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*