George P. Beringer and Nelda Beringer, Appellants,
v. Florence Lackner, Executrix of Estate of
Julius Lackner, Deceased, Appellee.

Gen. No. 43,883.

Opinion filed June 4, 1947. Released for publication June 19, 1947. Opinion modified September 15, 1947.

ASKOW & STEVENS, of Chicago, for appellants; IRWIN J. ASKOW and RICHARD JAMES STEVENS, both of Chicago, of counsel.

LORD, BISSELL & KADYK, of Chicago, for appellee; GORDON R. CLOSE and JOHN L. DAVIDSON, both of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

This is a malpractice suit begun in August, 1943. The original defendant died in January, 1945. The case proceeded against the Executrix of his estate. At the close of plaintiff's case the court directed a verdict for defendant and entered judgment accordingly. Plaintiffs have appealed.

Nelda Beringer, hereinafter called the patient, consulted with Dr. Lackner on April 13, 1943, and engaged him to perform an operation upon her. She entered Michael Reese Hospital April 25 and was operated on the following day. Dr. Lackner attempted curettement, but the operation developed into a vaginal hysterectomy. During the first 9 days following the operation, the patient was in a normal postoperative condition. Following this period she developed a high fever, her abdomen became sore, distended and discolored and her entire skin changed color. She was placed in an oxygen tent for three weeks; was given opiates, stimulants, transfusions of blood and drugs; and was fed intravenously and her stomach continuously pumped. Doctors Richter and Kraft were called into consultation on May 9th and 21st, respectively. They consulted with Dr. Lackner and found the patient suffering from peritonitis and paralysis of the large bowel. The patient remained in the Michael Reese Hospital until June 5, 1943.

She was then taken to St. Anne's Hospital where she spent a month. In September 1944 Dr. Kraft operated on her and removed her ovaries, having found them cystic, enlarged and diseased.

The case was tried upon an amended complaint as amended. There were 8 counts, 4 alleged by the patient and 4 by her husband. These counts charged an unauthorized hysterectomy, negligent performance of a hysterectomy, and an unauthorized hysterectomy without an incision in the abdomen. Defendant answered admitting the consultation on April 13, but denying all other allegations. The court instructed the jury to find defendant not guilty as to all 8 counts.

Both plaintiffs were precluded from testifying by reason of disqualification under Section 2 of the Evidence Act [Ill. Rev. Stat. 1945, ch. 51, par. 2; Jones Ill. Stats. Ann. 107.068]. One of the internes who helped Dr. Lackner at the time of the operation testified that he took the history of her health when she came into the hospital April 25th. He identified the record he made of the history as given. This record discloses the patient entered the hospital complaining of a backache and vaginal discharge; that she suffered a stroke in 1931; had had a "strep" throat; and an appendectomy and suspension of the uterus. It further disclosed that she carried abdominal and rectal scars and had a tenderness in the right lower abdominal quadrant. It also contained the impression of the interne making the record, that there was gynecological pathology. Another hospital record disclosed that the patient was admitted to the hospital, walking and in apparently good condition.

Plaintiffs say that the court should not have directed a verdict as to Counts 1 and 4. Those counts charged merely an unauthorized hysterectomy after employment for curettement. It is admitted that Dr.

Lackner consulted with the patient before the operation. It is shown that he performed the operation. Dr. Lazarus, attending interne, testified that curetting was attempted, but "because of difficulty encountered in trying to dilate the cervix preparatory to a curettage, for some reason the dilation and curettage was not performed and Dr. Lackner . . . did a vaginal hysterectomy. . . ." A hypothetical question to Dr. Kraft on the causal connection between the operation and the consequences to the patient's health was objected to and was not answered. There is enough evidence, however, of the post-operative condition to warrant finding that her condition after was due to the operation.

The cases cited by defendant on this point are not pertinent. It is our view that, on this question of law, plaintiffs are entitled to the inference from Dr. Lazarus' testimony that the hysterectomy was performed without consent. We cannot hold as a matter of law, therefore, that the hysterectomy was discretionary in Dr. Lackner's duty to the patient, or an emergency operation necessary for preservation of the patient's life or health, and that it was impracticable to obtain consent of the patient or one qualified to give consent. *Pratt v. Davis*, 224 Ill. 300; 41 Am. Juris. pp. 220, et seq.; 139 A. L. R. pp. 1370, 1374. The court should have let Counts 1 and 4 go to the jury.

The principal dispute here revolves about another hypothetical question. The question bears upon the question of negligence. It is not related to Counts I and IV. It is not clear to us why plaintiffs indicated apparent satisfaction with the court's ruling on the negligence counts and yet make their principal arguments on a question related to those counts. In fairness to plaintiffs we believe we should pass upon the

question, so that should it arise at the trial, the court may have our judgment.

The question arises out of the testimony of Dr. Adolph Kraft, who was a consultant to Dr. Lackner and who later operated on the patient. He testified that when he examined the patient May 21, at the Michael Reese Hospital, she was in a post-operative condition of near shock. A hypothetical question was propounded to this witness which assumed that the uterus was fixed to the anterior wall before the operation. An objection was made to this assumption on the ground that the testimony showed only a suspension of the uterus. Before the question was reframed, upon the court's instruction, the witness testified that if the assumption in the hypothetical question was a suspension of the uterus, without specifying the type of suspension, he could not give an opinion. He said a suspension could be effected either by shortening ligaments or by fixing the uterus to the abdominal wall. As previously noted, the hospital record showed a suspension of the uterus. The doctor who took the history testified that the patient gave a history of a previous abdominal operation, ''done suspending the uterus at the anterior abdominal wall.''

The parties agree that statements by a person inconsistent with his position at the trial are admissions which may be received in evidence against him. Defendant says that that rule does not apply where the party making the admission cannot explain, qualify or deny the statement, as the late Dr. Lackner here. Defendant does not dispute that if the statement is an admission it may be introduced against Dr. Lackner's executrix. *Schell v. Weaver,* 225 Ill. 159. She says that the cases cited by plaintiff involve statements inconsistent with the position of the party's representative at the trial.

A memorandum in the hospital record was offered in evidence. This memorandum includes the statements,

> "Vaginal Hysterectomy
> Fibrotic Uterus Fundus
> Fixed at Ant. Wall
> Extremely difficult hysterectomy
> J. C. L."

There was testimony from which it appears that the statements were in the handwriting of Dr. Lackner. On objection by defendant the memorandum was excluded by the court as incompetent because of the doctor's death. This ruling was vital to plaintiff's case because the memorandum, if admissible, is the basis for the assumption, in the hypothetical question, without which Dr. Kraft could not answer. Plaintiff claims error in the ruling, saying that the memorandum was admissible on the ground, among others, that it was an admission of a party to the record. Defendant argues that, since there is nothing inconsistent between the statements in the memorandum and defendant's position at the trial, the memorandum is not an admission.

The amended complaint charged, among other things, that the doctor negligently performed an hysterectomy without making an abdominal incision. Implicit in this charge were the charges that the position of the patient's uterus at the time, required that the operation be performed through the abdomen. These implications are shown by plaintiff's theory of proof. Defendant denied the charge and, therefore, the implications. Defense counsel in objections and cross-examination at the trial indicated that defendant's position was that the patient's uterus at the time of operation was not fixed to the anterior wall, but was

suspended. Plaintiff's position was clearly that the uterus was fixed to the anterior abdominal wall. It is our view the statements in the memorandum were inconsistent with defendant's position at the trial.

In *Republic Iron Co. v. Industrial Commission,* 302 Ill. 401, the Supreme Court held a statement of plaintiff's decedent admissible against plaintiff, his administratrix, as a declaration or admission against decedent's interest. In *Patten v. Knowe,* 354 Ill. 156, 188 N. E. 173, the court held admissible, and binding on his estate, memoranda made by decedent against his interest and in favor of plaintiff. Whether the memorandum in the instant case is in Dr. Lackner's handwriting, is a question of fact. If he wrote it, or by his signature approved the statements therein, we think that the pertinent statement is an admission binding on defendant, according to its probative value: A "party-opponent" admission which should have been received in evidence against defendant. Wigmore on Evidence, 3rd Ed., Secs. 1048 and 1081. The fact that the doctor was not available to testify about the memorandum, does not render it inadmissible. We think that the test of trustworthiness is met in a case such as this when it is proved sufficiently that it was a statement of the doctor's. The court in considering the motion to direct a verdict for the defendant, should have considered the statement as meaning that the uterus was fixed in the sense that Dr. Kraft gave the term.

We cannot say that the court committed error in sustaining objections to questions put to witnesses to elicit statements made to them by Dr. Lackner. There is nothing in the questions to show that the answers would be competent admissions or statements of the doctor. Plaintiff's counsel said he would make

a later offer to show competency. We are not referred to the offer and assume it was not made.

■ We see no error in the exclusion of a laboratory report of a uterus. The testimony of the witness produced to identify the report was too vague to furnish a proper foundation for admission of the report in evidence. Proof of a competent report of the post-operative condition of the patient's uterus could be material, in use of hypothetical questions, to the theory of an improper operation.

■ We think the court improperly refused to permit Dr. Noskin, interne at the operation, to refresh his recollection of the kind and detail of the operation at the trial by reference to his earlier deposition. *Iglehart v. Jernegan,* 16 Ill. 513; 3 Wigmore (3rd) p. 106 (2).

Since the case is to be retried we shall not pass on further points raised.

The judgment of the Superior Court is, therefore, reversed and the cause is remanded for trial.

*Reversed and remanded.*

Lewe, P. J., and Burke, J., concur.